## In re CONSOLIDATED FACTORS CORPORATION.

No. 48880.

District Court, S. D. New York.

Jan. 21, 1931.

Hartman, Levy & Hartman, of New York City (Hugo Levy and Gustave Hartman, both of New York City, of counsel), for petition.

Gleason, McLanahan, Merritt & Ingraham, of New York City (Burgess Osterhout, of New York City, of counsel), opposed.

WOOLSEY, District Judge.

The petition to review herein is hereby denied, and the order of the referee complained of thereby is hereby in all respects approved and confirmed.

I. On June 15, 1929, after some preliminary negotiations, Oscar Greenstein, president of the bankrupt, which was then known as Pelz-Greenstein & Co., Inc., entered into a contract with Thomson, Fenn & Co., of Hartford, Conn., representing the Hartman Tobacco Company, for the exchange of shares of stock of Pelz-Greenstein & Co. for shares of the Hartman Tobacco Syndicate and the payment of $17,000 in cash to Greenstein.

This contract is embodied in a letter addressed to Mr. Greenstein, which reads as follows:

"Mr. Oscar Greenstein, 200 Madison Avenue, New York City.

"Dear Sir: This is to confirm purchase from you for the account of The Hartman Tobacco Company Syndicate—3,000 shares Pelz, Greenstein & Company, Inc. No par value Capital Stock at $35 per share, the total amount of that purchase being $150,000. In payment therefor, The Hartman Tobacco Company Syndicate have sold to you—4,000 shares The Hartman Tobacco Company $10

par Value Common Capital Stock at $22 per share, a total of $88,000. A check for the balance between the purchase and sale of $17,000 is handed you herewith.

"It is agreed by Mr. Oscar Greenstein that The Hartman Tobacco Company stock will not be sold by him until the price thereof shall have reached at least $32 per share, or the equivalent of that price should a recapitalization take place. It is agreed by Thomson, Fenn & Company, representing The Hartman Tobacco Company Syndicate, that the Pelz-Greenstein & Company, Inc., stock will not be sold until the price thereof shall be at least $45 per share or the equivalent to that price in the event of recapitalization.

"This agreement shall remain in effect for a period of two years from date, and is binding upon any person or persons in whose name either of the above stocks may be registered.

"Very truly yours,
"[Signed]    Thomson, Fenn & Co.
"[Signed]
"Accepted
"Os. Greenstein"

As a result of this contract, the Hartman Tobacco Company stock, which is the subject of this reclamation proceeding, was transferred to Mr. Greenstein, and the Pelz-Greenstein Company stock was transferred to the Hartman Tobacco Company Syndicate, of which the reclaimant, Alfred Newfield, was the leading member, and Greenstein received a check for $17,000, which was duly honored.

The situation then was that each party to the contract of June 15, 1929, owned the stock which had been transferred to it and each had made a negative covenant with the other in regard to dealing with the stock. This agreement was to be in force for two years from June 15, 1929, and purported to be binding upon any person or persons in whose names either of the above stocks might be registered.

Subsequently Pelz-Greenstein & Co., Inc., was reorganized under the name of the Consolidated Factors Corporation, the present bankrupt, and, in place of the 3,000 of Pelz-Greenstein & Co. stock which the Hartman Tobacco Syndicate had received under the above contract of June 15, 1929, they received 4,500 shares of the stock of the Consolidated Factors Corporation.

The reclaimant contends that during the negotiations leading up to this exchange of stock certain statements were made to him as to expected developments in the way of dividends and listing of the Pelz-Greenstein stock on the curb market. These expectations were not realized, and consequently, in February, 1930, he sought to rescind the exchange of stock made June 15, 1929, and get a return of the $17,000 paid to Greenstein.

The endeavor to arrange this rescission ultimately resulted in a meeting on or about February 19, 1930, at Hartford, Conn., where Greenstein agreed with the Hartman Tobacco Syndicate that on May 1, 1930, he would return the Hartman Tobacco Company shares which he had received, and at the same time would pay back the $17,000 cash differential, and receive back the 4,500 shares of the Consolidated Factors Corporation stock which the Hartman Tobacco Syndicate then had.

Although requested to do so, Greenstein refused to carry out the rescission and make the re-exchange of stock before May 1, 1930. The whole matter was therefore postponed till May 1, 1930, and meantime he gave his note payable May 1, 1930, for $17,000.

Thus until May 1, 1930, the rescission agreement of February was purely executory, and the title to the stock remained just as it was after the exchange was made under the contract of June 15, 1929.

Subsequent to the executory agreement of rescission, Greenstein transferred for valuable consideration to the Consolidated Factors Corporation his 4,000 shares of the Hartman Tobacco Company stock, and the trustee in bankruptcy now has 4,000 shares of said stock; all of said shares being the certificates turned over to Greenstein by the Hartman Tobacco Syndicate except 800 shares, which, apparently, were substituted in place of the original 800 shares; but, owing to the view I take of this matter, this detail will not be further noticed.

Inasmuch as the exchange under the contract of June 15, 1929, of Hartman Tobacco Company Syndicate stock for Pelz-Greenstein & Co., Inc., stock, subsequently converted into Consolidated Factors Corporation stock, was a transfer of title, as the referee has found, the fact that the memorandum of sale in the letter of June 15, 1929, contained mutual restrictive covenants is immaterial in my opinion so far as third parties are concerned.

I hold not only that Greenstein's knowledge of that negative covenant did not bind the Consolidated Factors Corporation because he was president of that Corpora-

tion, but I go still further and hold that, assuming that the Consolidated Factors Corporation did have notice of Greenstein's restrictive covenant as to the sale of the Hartman Tobacco Company stock. that fact would not make it a trustee in equity of the stock for the Hartman Tobacco Syndicate or for the reclaimant.

■ The only possible basis, in my opinion, on which such a theory of a fiduciary relationship between the bankrupt and the reclaimant could be worked out would be that there could have been in equity a specific performance of the rescission agreement of February 19, 1930, for the re-exchange of the stock, or else an enforcement of the negative covenant by Greenstein contained in the letter of June 15, 1929, by which he agreed not to sell any of the Hartman Tobacco Company stock except in certain contingencies which confessedly did not arise.

I do not think that specific performance would lie under such circumstances.

There was not anything unique about the Hartman Tobacco Syndicate stock. It could be bought on the curb exchange, and, if Greenstein broke his contract with them, the Hartman Syndicate could have bought the Hartman stock on the curb and held Greenstein for the damages which they might suffer by his having transferred the stock which they had turned over to him in pursuance of the agreement of June 15, 1929.

■ As a general rule a restrictive covenant on a chattel or other personal property does not follow it into the hands of third persons whether such persons have notice of the covenant or not.

There may be occasional exceptions to this rule. One is to be found in the English courts in Lord Strathcona Steamship Company, Limited, v. Dominion Coal Company, Ltd., 1926 App. Cas. 108, affirming with modifications a decision of the Nova Scotia Supreme Court in a case which I argued unsuccessfully in Nova Scotia, Dominion Coal Co., Ltd., v. Lord Strathcona Steamship Co., Limited, 57 Nova Scotia, 113.

In that case the original owners of the steamship Lord Strathcona had made a long-time charter of that steamship to the Dominion Coal Company, Limited, for whose coal trade in the St. Lawrence river she was somewhat uniquely adapted. Subsequently the Lord Strathcona Steamship Company, Limited, was formed in Canada and purchased the vessel from her previous owners with notice of this charter party. The Privy Council held that the new owner was bound by an implied negative covenant not to deal with the ship in contravention of the charter party, and a negative injunction was allowed against such breach of the charter, although admittedly specific performance would not have been granted.

That case is a rare exception to the usual rule that personal property is free of restrictive covenants even though notice of them is communicated to the purchaser of such property.

■ Consequently, in my opinion, the only party bound by the negative covenant contained in the contract letter of June 15, 1929, or by any undertaking involved in the oral rescission agreement of February 19, 1930, was Greenstein. He was only bound in law and not in equity; for he and the Hartman Tobacco Syndicate were not involved in any fiduciary relationship, but were dealing at arm's length as purchaser and seller of the Hartman Tobacco Company stock.

Consequently, if Greenstein broke his covenant, the recourse of his obligee was not to a proceeding such as this, which in effect is an attempt to impress a trust on the Hartman Tobacco Company stock in the hands of a third party, but was to an action at law against Greenstein to be brought after the obligee had fixed his damages by purchase of the Hartman Tobacco Company stock in the open market.

Appropriate orders may be settled on two days' notice.