Joseph E. Haller, appellee and cross-appellant, v.
Chiles, Heider and Co., Inc., a corporation,
appellant and cross-appellee.
236 N. W. 2d 822

Filed December 24, 1975. No. 40089.

James M. Bausch and Cline, Williams, Wright, Johnson & Oldfather, for appellant.

D. C. Bradford, III, and Jeffrey A. Silver of Bradford, Bloch & Coenen, for appellee.

Heard before Spencer, McCown, and Newton, JJ., and Weaver and Blue, District Judges.

Spencer, J.

This is a declaratory judgment action brought by Joseph E. Haller, plaintiff, against Chiles, Heider and Co., Inc., to determine stock option purchase rights of the parties. The issue involved is when defendant exercised its right to purchase plaintiff's stock and the procedures involved in determining net book value. Plaintiff contends defendant did so in a letter dated January 28, 1974. Defendant contends it did not do so until its letter of February 27, 1974. The trial court

determined that the defendant had not validly exercised its option. Defendant appealed and plaintiff cross-appealed. We find for plaintiff and reverse.

Haller owned 40,000 shares of defendant's stock. He was also a vice president and director of defendant. In September of 1971, defendant, with Haller's approval as stockholder, adopted revised articles of incorporation. Under these revised articles defendant was granted an option to purchase Haller's stock if he decided to leave the company. Haller resigned on December 31, 1973. On January 2, 1974, at a special meeting, defendant's board of directors accepted Haller's resignation and decided to exercise the option to purchase his stock.

Article VI of the revised articles of incorporation provides that all shares of capital stock shall be held subject to the conditions and restrictions set forth in the revised articles of incorporation. These provide the corporation shall have a right for 60 days to purchase the shares of a stockholder whenever the stockholder ceases to actively engage in the business of the corporation. The purchase price is to be the net book value of the shares as determined as of the close of business on the date of commencement of the applicable option period.

Section 6 of Article VI of the revised articles defines the method of determining the net worth and net book value. It is as follows: "Method of Determination of Net Worth and Net Book Value. The net worth of the Corporation shall be determined by the Corporation in accordance with sound accounting principles but shall be adjusted up or down, as the case may be (i) to reflect the market value (the mean of the bid and ask price) of all memberships on securities exchanges owned by the Corporation or covered by so-called a-b-c agreements, (ii) to reflect the unrealized gain or loss on short sale commitments, (iii) to reflect securities owned at market value or, in the absence of market quotations, at fair value as determined by the Board of Directors of the Corporation, (iv) to provide appropriate accruals

for all taxes (including all taxes based on income), bonuses and all other employee compensation (including compensation determined and payable after the end of the then current fiscal year), reserves for contingent liabilities and any other reserves which the Board of Directors of the Corporation may deem proper, and all other items of income and expense attributable to the period prior to the date as of which the determination is made, and (v) to exclude any value whatsoever for customer's lists, records and files and good will appertaining to the name or business of the Corporation. The net book value of shares of Common Stock shall be computed by dividing the aggregate number of shares of Common Stock outstanding into the net worth of the Corporation."

On January 28, 1974, defendant sent the following letter to the plaintiff:

"Mr. Joseph E. Haller
5124 Izard
Omaha, Nebraska 68132
Dear Joe:

"You are the owner of 40,000 shares of Common Stock, par value $1 per share, of Chiles, Heider & Co., Inc. As of December 31, 1973, you ceased to be actively engaged in the business of Chiles, Heider & Co., Inc. Pursuant to the provisions of Article VI of the Revised Articles of Incorporation of Chiles, Heider & Co., Inc. it hereby exercises its right to purchase your 40,000 shares of Common Stock. Such purchase will be made by Chiles, Heider & Co., Inc. and the consideration to be paid for such shares shall be the net book value of the shares as of December 31, 1973. Payment therefor will be made in cash in accordance with the provisions of Section 8 of said Article VI.

"As you know, Arthur Andersen & Co. is making an audit of the financial records of the corporation as of that date and, as soon as that audit has been completed (which should be in the next several weeks), we will

then sit down and determine the net book value and be in contact with you.

"Very truly yours,
Charles Heider (sgd.)
Charles F. Heider
President"

On February 27, 1974, defendant sent the following letter to the plaintiff:

"Mr. Joseph E. Haller
5124 Izard
Omaha, Nebraska 68132
Dear Joe:

"We advised you on January 28, 1974 that Chiles, Heider & Co., Inc. would exercise its right to purchase your 40,000 shares of Common Stock pursuant to the provisions of Article VI of the Revised Articles of Incorporation of Chiles, Heider & Co., Inc. with Chiles, Heider & Co., Inc. being the purchaser.

"While we have now received our annual audit, we also have been named defendant in a lawsuit pending in the District Court of Douglas County, Nebraska Docket 671 - No. 317, William Mollie, Plaintiff, vs. Chiles, Heider & Co., Sanitary and Improvement District No. 195 of Douglas County, Nebraska, et al, Defendants, in which a judgment is sought against Chiles, Heider & Co., Inc. for $240,233.52, plus interest. You will recall that this was a matter which you handled for the corporation while you were employed by it.

"Subject to approval of the New York Stock Exchange, settlement will be made with you on or before August 25, 1974, which is 180 days after the date notice of transfer of your shares was requested of the Exchange. Our calculations of December 31, 1973 net book value amount to $4.403 per share, but without any reserve for contingent liability.

"As provided in the Articles, it is our present intention to establish a reserve for contingent liability in connection with the previously mentioned lawsuit equal to 58¢

per share. It is very possible that additional lawsuits of a similar nature might be filed against us in connection with this and other Sanitary and Improvement Districts, and, based upon our judgment of this possibility, we may increase the contingent liability reserve accordingly.

"Sincerely yours,

"Charles Heider (sgd.)

Charles F. Heider

President."

Section 25-1925, R. R. S. 1943, provides: "In all appeals from the district court to the Supreme Court in suits in equity, wherein review of some or all of the findings of fact of the district court is asked by the appellant, it shall be the duty of the Supreme Court to retry the issue or issues of fact involved in the finding or findings of fact complained of upon the evidence preserved in the bill of exceptions, and upon trial de novo of such question or questions of fact, reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof."

Defendant contends the notification of February 27, 1974, was the effective exercise of the option and that the net book value of the shares on December 31, 1973, of $4.403 per share should be reduced by a reserve for contingent liability. Passing for the moment the letter of January 28, 1974, it is apparent to us, as the trial judge found, the letter of February 27, 1974, was not a proper exercise of the option. It is true that the defendant specified amounts, but it also included this statement: "It is very possible that additional lawsuits of a similar nature might be filed against us in connection with this and other Sanitary and Improvement Districts, and, based upon our judgment of this possibil-

ity we may increase the contingent liability reserve accordingly."

This brings us to the question as to whether the notification of January 28, 1974, was an effective exercise of the company's option. The trial court held it was not because it did not set out the consideration and the date of payment. We do not agree. Plaintiff is told in that letter that the defendant *"hereby exercises its right to purchase your 40,000 shares of Common Stock."* (Italics added.) He was told that the purchase was to be made by the defendant. The consideration to be paid for the shares was to be the net book value of the shares as of December 31, 1973. Payment was to be made in cash in accordance with the provisions of section 8 of Article VI. That section provides that the date for payment shall not be less than 180 days after notice of the election to exercise the option has been given to the New York Stock Exchange and to the holder of the shares to be purchased.

The parties knew that an audit was being prepared as of December 31, 1973. The letter states the consideration shall be the net book value of the shares as of that date. The net value was not going to change. When it was determined, the parties would divide the number of shares into the total net value and determine the individual share value as of December 31, 1973. This when multiplied by the number of shares held by plaintiff would give the amount to be paid him. We believe the letter was definite enough to comply with the option provisions of the amended articles and the requirements of the New York Stock Exchange.

Exhibit 4, which is dated February 11, 1974, is the New York Stock Exchange financial questionnaire as of December 31, 1973, together with the auditor's report. It indicated plaintiff had withdrawn from the company as of December 31, 1973, and that the cash value of his shares as of that time was estimated at $176,120. This would be $4.403 per share. Haller had previously signed

an agreement that the approval of the New York Stock Exchange was required when stock was sold.

Exhibit 21 is a computation of aggregate indebtedness and net capital based upon the answer to a financial questionnaire being submitted to the New York Stock Exchange as of February 11, 1974, by defendant's independent public accountants. Included in exhibit 21 is a certification by the president and secretary of defendant. They certify as holders of voting stock of defendant that they had "caused an audit to be made" and that to the best of their "knowledge and belief, the answers to this questionaire prepared as of December 31, 1973, represent a true and correct financial statement of our firm and that the answers will promptly be made available to those holders of voting stock whose signatures do not appear below."

Included as a part of exhibit 21 is exhibit 20. It is as follows:

STOCKHOLDERS EQUITY 12-31-73                     1,939,731.24

|  | COST | MARKET | GAIN(LOSS) |  |
|---|---|---|---|---|
| NYSE | 222,500.00 | (1)107,500.00 | (115,000.00) | |
| CBOE | 12,150.00 | (2) 26,500.00 | 14,350.00 | |
| | | | | (100,650.00) |
| | | | | 1,839,081.24 |

Adjusted Stockholder Equity 1,839,081.24   =   4.403

Outstanding Shares        417668

| | | | | |
|---|---|---|---|---|
| Joseph E. Haller | 40000 | × | 4.403 | 176,120.00 |
| James E Michels | 5618 | × | 4.403 | 24,736.05 |
| | | | | 200,856.05 |

|  | NYSE | CBOE |
|---|---|---|
| BID | 90000 | 26000 |
| ASK | 125000 | 27000 |
| | 215000 | 53000 |
| MEAN | (1)107500 | (2)26500 |

Exhibit 20 shows the adjusted stockholder equity for each share. It is $4.403. It also gives the names of the two stockholders withdrawing from the company and lists plaintiff as owning 40,000 shares at $4.403 a share, or $176,120. This exhibit shows the stockholder equity as of December 31, 1973, the date on which the net book value of the shares of defendant corporation were to be determined in accordance with defendant's letter of January 28, 1974. There can be no question that defendant is certifying to the New York Stock Exchange that the value of plaintiff's stock at the close of business December 31, 1973, was $176,120.

Defendant, in its brief, states that the audit of its financial records was completed February 11, 1974, the date of the report to the New York Stock Exchange. On February 13, 1974, a taxpayer filed a lawsuit in the District Court for Douglas County, Nebraska, against the defendant and other named defendants. The lawsuit prayed for money damages in the amount of $240,233.52 on behalf of the city of Omaha. The cause of action alleged in the lawsuit arose out of work done by the defendant and others on Sanitary and Improvement District No. 195. Subsequent to the filing of the lawsuit defendant wrote the letter of February 27, 1974. In this letter defendant stated it intended to establish a contingent liability reserve equal to 58 cents per share, and suggested the possibility that it might increase the contingent reserve if additional lawsuits were filed. It is obvious that the establishment of a reserve for contingent liability was an afterthought brought to defendant's attention by the filing of the action on February 13, 1974. Despite this fact, however, the defendant on February 20, 1974, wrote the following letter to the New York Stock Exchange:

"New York Stock Exchange, Inc.
Department of Member Firms
23rd Floor
55 Water Street

New York, N. Y. 10041

Gentlemen:

"In compliance with Rule 320 we request Exchange approval to redeem the shares of stock owned by the following individuals:

| Name of Stockholder | Shares Owned | Redemption Value |
| --- | --- | --- |
| Joseph E. Haller | 40,000 | $176,120 |
| James E. Michels | 5,618 | 24,736 |

The redemption price of $4.03 ($4.403) per share determined as of December 31, 1973 would amount to a total reduction in capital of $200,856.

"The net capital ratio on December 31, 1973 was 1.36 to 1. If the repurchase had been consummated prior to that date the ratio would have been 1.63 to 1. The net capital ratio on January 25, 1974 after giving effect to the redemption of the shares would be 0.71 to 1.

"Mr. Haller, a vice president, allied member and voting stockholder, resigned effective December 31, 1973.

"Mr. Michels, a registered representative and voting stockholder, because of personal reasons requested that the firm redeem his shares as of December 31, 1973. Mr. Michels will continue in his capacity of registered representative.

"We would appreciate your expeditious consideration of this matter. Please contact me if additional information is required.

"Yours truly,
Robert C. Rawley
Secretary-Treasurer"

From the letter of February 20, 1974, it is evident that the defendant was requesting approval to redeem the shares of stock held by the plaintiff without reference to any contingency reserve. Seven days later the defendant wrote the letter it now claims was the one in which it exercised its option. It is evident to us that as late as February 20, 1974, as plaintiff had previously been told orally, the net value of each share of his

stock was $4.403, and that the contingent liability reserve was an afterthought not included in the original transaction.

We reverse the judgment of the trial court and remand the cause with directions to enter judgment for the plaintiff in the amount of $176,120, and the costs of this action.

REVERSED AND REMANDED WITH DIRECTIONS.

McCOWN, J., dissenting.

The revised articles of incorporation contain the complete terms of the stock option agreement involved here. That agreement could not be and was not altered by the unilateral conduct or writings of either party acting alone. The letters of January 28 and February 27 had no contractual effect except as notice of exercise of the option in accordance with the articles of incorporation. The only real issue here is whether, under the terms of the option contained in the revised articles, the defendant had the right to set up a reserve for the contingent liabilities involved. Collateral issues are whether the reserve was reasonable and timely.

Under the specific terms of the option in the revised articles of incorporation, the net worth of the stock was to be determined by the defendant, and was to be adjusted to provide reserves for contingent liabilities, among other things. The contingent liabilities involved here were in existence on December 31, 1973, and there is not even a claim that the amount of the reserve was unreasonable. In fact, the remainder, if any, of plaintiff's share of the reserve for contingent liabilities will be paid to plaintiff when those liabilities have been finally determined and settled. The majority opinion writes into the option in the revised articles terms which are not included, and writes out other terms which are included. The express terms of a written, binding option cannot be disregarded or adjusted on the basis of the unilateral interpretation of one of the parties. Neither does the record support that action here.