F.H.T., INC., A CORPORATION, THE MABEL T. ERICKSON
IRREVOCABLE TRUST, AND JAMES S. BAILEY, TRUSTEE,
APPELLEES, V. DUANE R. FEUERHELM, PERSONAL
REPRESENTATIVE OF THE ESTATE OF JERALD E.
FEUERHELM, DEFENDANT AND THIRD-PARTY PLAINTIFF,
APPELLANT,· AND
F.H.T., INC., A NEBRASKA CORPORATION, HASTINGS
PORK, INC., A NEBRASKA CORPORATION, AND BRAD
FEUERHELM, THIRD-PARTY PLAINTIFFS, APPELLANTS, V.
JAMES S. BAILEY, INDIVIDUALLY AND AS TRUSTEE OF THE
MABEL T. ERICKSON IRREVOCABLE TRUST, GARY
DUNCAN, HAYDEN THOMPSON, AND ALEX LESLIE,
THIRD-PARTY DEFENDANTS, APPELLEES, AND SHARON
E. FEUERHELM, INTERVENOR-APPELLANT.

320 N.W.2d 772

Filed June 11, 1982. No. 81-808.

Lyle E. Strom and T. Geoffrey Lieben of Fitz-
gerald, Brown, Leahy, Strom, Schorr & Barmettler,
for appellants Duane Feuerhelm, F.H.T., Hastings
Pork, and Brad Feuerhelm.

Jay S. Horowitz and Gregory D. Schetina of Dur-
ham & Horowitz, and Gerald T. Whelan of Whelan,
Foote & Scherr, P.C., for appellees F.H.T., Erickson
Trust, Bailey, Duncan, Thompson, and Leslie.

M. J. Bruckner and W. Scott Davis of Marti, Dal-

ton, Bruckner, O'Gara & Keating, for intervenor-appellant Sharon Feuerhelm.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and CAPORALE, JJ.

PER CURIAM.

This action represents the competing claims by two groups of stockholders for control of F.H.T., Inc. (FHT), a closely held corporation formed in this state on October 17, 1968.. The appeal results from the judgment of the District Court of Nebraska, Tenth Judicial District, in and for Adams County, enforcing a buy-out provision and holding that the intervenor is not a proper party to this action. We affirm in part, and in part remand for further proceedings.

The primary issue on appeal concerns the validity of a buy-out provision entered into between the controlling shareholders of the corporation, and, if valid, whether it had been waived, abandoned, or repudiated by the parties. Other issues concern whether a proper tender was made pursuant to that provision and whether the intervenor is a proper party to this action.

FHT was formed in 1968 by Jerald Feuerhelm, Burton Hutton, and Hayden Thompson, and consisted of a contained hog production facility in Hastings, Nebraska. The three men had met in North Dakota, where Thompson was a banker with wide agricultural and commercial investments; Feuerhelm and Hutton were partners in a small hog farrowing operation. The men became friends and subsequently developed a business interest in a mass hog production business in Edgemont, South Dakota, prior to organizing the Hastings facility. Upon incorporation of FHT, the men became the sole stockholders, directors, and officers of the corporation, with Thompson and Feuerhelm each receiving a 40 percent interest and Hutton owning the remaining 20 percent. Thompson provided most of

the capitalization for FHT, while Feuerhelm's contribution consisted largely of his experience in operating pig farms. Hutton was unable to raise his share of the capital contribution and, after January of 1969, appears to have had little role in the operation of the company. Hutton was removed as an officer of FHT on June 7, 1972; however, his shares were not redeemed by FHT until January of 1974.

At a stockholder meeting held on or about December 1, 1972, a stock transfer restriction resolution was entered between Thompson and Feuerhelm. The minutes of that meeting reflect that the purpose of the resolution was to restrict "the sale or transfer of shares of the company both during the lifetime and at the death of any of the stockholders in order to assure the continuity of the ownership of the company." A pertinent part of the resolution provides: " 'BE IT RESOLVED that the *undersigned owners* of the shares of the company shown opposite their names:

| Stockholder or Noteholder | No. of Shares |
|---|---|
| J. E. Feuerhelm | 5,300.1 |
| Hayden Thompson | 1,028 |

have agreed *with the company and each other* to the sale and transfer of shares of stock owned or to be owned by them through conversion by them as follows . . . .' " (Emphasis supplied.) The first provision of the resolution consists of a lifetime stock transfer restriction requiring the shareholders to first offer their shares for sale to the company at a price equal to the then book value. The book value is to be determined by the independent certified accountants for the company. The resolution further provides the manner in which notice of a sale is to be communicated to the corporation officers and shareholders. The men agreed that the purchase price determined was to be paid by the purchaser with a promissory note due 15 years from the date of sale, bearing interest at the rate of 4 percent per annum, principal plus interest payable at the end of the 15-year term.

The resolution also contains a buy-out provision to be effective upon the death of a stockholder. The provision provided in part: " '[T]he company shall purchase and the estate or personal representative of the deceased stockholder shall sell the decedent's stock in the company for a consideration equal to the book value of such stock as established by the accountants for the company as herein provided above. . . . The closing of the sale and purchase of the shares by the company or, in the event of its inability to complete said purchase by the surviving stockholders, shall be made within 6 months after the date of the deceased stockholders' death and the purchase price shall be paid to the estate of the decedent under the terms [above].' " The resolution was endorsed by Thompson and Feuerhelm as both officers and shareholders of the corporation.

Jerald Feuerhelm died on June 5, 1980, whereupon his brother, Duane Feuerhelm, a resident of California, was appointed special administrator and personal representative of his estate. This action arises from a dispute among the parties concerning their participation in the corporation, its capitalization, and the validity of the 1972 stock transfer resolution. This action was brought on behalf of FHT, the Mabel T. Erickson Irrevocable Trust (which holds the Thompson stock in FHT), and James S. Bailey, as trustee, seeking an injunction to enforce the buy-out resolution. The Feuerhelm estate has refused to sell its shares back to FHT and has counterclaimed on behalf of FHT, alleging the 1972 resolution as void, unenforceable as being an unreasonable restraint on alienation, or as being waived or rescinded by subsequent acts of Jerald Feuerhelm and Hayden Thompson. In addition, Sharon Feuerhelm, the former wife of Jerald Feuerhelm, filed a petition in intervention to this action, alleging that the 1972 resolution was void for the reason that it

had been used to perpetrate fraud upon her during the pendency of her 1979 divorce action.

This matter came to trial on June 8-10, 1981. The court found the stock transfer resolution to be valid and properly executed by Feuerhelm and Thompson and not waived or abandoned by them. The court ordered specific performance of the 1972 resolution, quieted all right, title, and interest in the Feuerhelm stock in FHT, and ordered Duane Feuerhelm to comply with the resolution by delivering the stock to the corporation. The court denied the claim of the intervenor, without prejudice, finding she failed to prove such fraud as would vitiate the buy-out provision.

In an action at equity, this court must review the record de novo and reach an independent conclusion without being influenced by the findings of the trial court, except, however, that where credible evidence is in conflict, we must give weight to the fact the trial court saw the witnesses and observed their demeanor while testifying. *Philip G. Johnson & Co. v. Salmen, ante* p. 123, 317 N.W.2d 900 (1982); *Chicago Lumber Co. v. Horner,* 210 Neb. 833, 317 N.W.2d 87 (1982); *Sturm v. Mau,* 209 Neb. 865, 312 N.W.2d 272 (1981).

We have examined and studied the voluminous and ofttimes duplicative exhibits and pleadings contained in the unprofessionally assembled record in this case, presented to us in disorganized fashion in a box, and determine that the stock restriction resolution entered into between Feuerhelm and Thompson is valid and enforceable. We also determine that the intervenor, Sharon Feuerhelm, is not a proper party to this action and that any claim she may have must be brought against the estate of Jerald Feuerhelm.

FHT is a simple and representative example of a closely held corporation, its stock ownership and

corporate management being originally vested in three people. After Hutton's failure to raise his share of the capital contribution, he was removed as an officer of FHT, his shares were subsequently redeemed, and the control of FHT was vested in the two remaining stockholders. For a general discussion on the attributes of close corporations, see O'Neal, Close Corporations §§ 1.02 and 1.07 (2d ed. 1971 and Cum. Supp. 1981). In such corporations, stock restrictions are devices often employed to insure that the management and control of the business remains with the same group of investors or with people well known to them. Such restrictions may be embodied in the articles of the corporation, in the bylaws, or in shareholder agreements, and generally provide that upon the withdrawal or death of a stockholder, his shares will be sold or transferred only to the remaining stockholders or to the corporation, or at least will be offered to them before being sold to any outsider. Such agreements make it possible for shareholders to choose future associates and prevent unwanted outsiders from entering the business if their integrity or business acumen is in doubt. See O'Neal, *supra*, §§ 7.05 and 7.06.

In the present case there is nothing in the articles of incorporation or bylaws of FHT which provides for a stock restriction or limits or restricts the right of the shareholders to enter into a stock restriction agreement. Our review of the agreement entered into between Feuerhelm, Thompson, and FHT convinces us that it constitutes a reasonable restraint on the power to transfer those shares held by the contracting parties and covered by the terms of the agreement, and it does not impose an absolute restriction on the alienability of the stock. In *Tu-Vu Drive-In Corp. v. Ashkins,* 61 Cal. 2d 283, 391 P.2d 828, 38 Cal. Rptr. 348 (1964), Justice Tobriner held that a reasonable provision restricting the transfer

of stock (1) should not constitute an unreasonably restrictive curtailment of the right of alienation and (2) should not otherwise unreasonably deprive the shareholders of substantial rights. This court, in *Elson v. Schmidt,* 140 Neb. 646, 652, 1 N.W.2d 314, 317 (1941), quoted the case of *Baumohl v. Goldstein,* 95 N.J. Eq. 597, 124 A. 118 (1924), for the following proposition: " 'There seems to be no reason in principle why they (the stockholders of a corporation) should not be permitted to retain the control of the corporation in which they have embarked their fortunes among themselves, or such of them as stand by the vessel, where no question of a *bona fide* purchaser without notice is involved. In this court, where the intent of the parties is the thing sought to be enforced, every effort should be made to hold men to agreements into which they have voluntarily entered, where the same are not obnoxious to any law or policy, and upon the strength of which others have changed their position or circumstances, or parted with a valuable consideration. It is *their* business and *their* money which is involved. It is by their efforts that success is attained, if attained at all.' " We determine from the evidence that the stock transfer agreement is valid and was adopted by the parties for legitimate corporate purposes, and that it does not impose an unreasonable restraint on the alienability of the FHT stock.

It is alleged by the Feuerhelm estate and the intervenor that even if the resolution were properly adopted, it was subsequently waived, abandoned, and repudiated by the actions of the parties. The evidence reveals that after the adoption of the stock restriction resolution, Feuerhelm and Thompson entered into a number of business transactions which consolidated their control over FHT and other mutual business enterprises. The capital for most of these transactions was provided by McHenry County Credit Company, Monagin Credit Company, or Gen-

eral Service & Credit Company, all entities owned or controlled by Hayden Thompson. In addition, both men had occasion to pledge their stock individually and as officers of the corporation, in order to secure financing for the corporation, with entities owned by Thompson and with other commercial entities. There is no showing that these pledges were objected to by either party, or that it was a violation of the stock resolution to pledge the stock. Rather, the evidence shows that these pledges were made with the consent of both parties. The resolution does not specifically refer to "pledges" of stock; it addresses itself to the "sale or transfer" of stock. As pointed out by O'Neal, *supra*, § 7.05a, these provisions have given courts considerable trouble: "On the one hand, the courts tend to strictly construe restrictions on the transfer of stock. On the other hand, they are reluctant to give such a restriction an interpretation that will permit outsiders to become shareholders in the corporation against the wishes of those who are already participants, and thus defeat one of the principal objectives of a first option provision. Influenced by these two considerations, the courts usually hold that a nonspecific first option provision is not triggered by a pledge of stock . . . ." *Id.* at 16. The evidence clearly reveals that the parties did not intend to place any restriction on the power to pledge the stock, as it was used often as a means of securing capital for the corporation. Nor can we conclude that the parties abandoned the resolution by their failure to legend all the stock with the restriction. While the failure to do so would render the stock restriction ineffective against a third party purchaser without notice of the restriction, we are not dealing with that question here. The restriction was effective between Thompson and Feuerhelm, for they had actual knowledge of the stock restriction. See, also, *In Re Consolidated Factors Corp.,* 46 F.2d 561 (S.D. N.Y. 1931), cited with approval in

Comment 4 of Neb. U.C.C. § 8-204 (Reissue 1980), holding that restrictive covenants in private shareholder agreements between stockholders are binding on the parties to such agreements. As Feuerhelm and Thompson were both executory parties to the resolution, they are bound by it, as are their heirs, personal representatives, successors or assigns.

We turn next to the allegations pertaining to the enforcement of the stock restriction resolution. The estate has refused to surrender the stock, contending that the payment terms under the resolution are unconscionable and that no valid tender was made because the book value of the shares had not been determined by generally accepted accounting principles by the corporation's independent accountants.

In the resolution the parties agreed that the price to be paid to a selling stockholder, or a deceased stockholder's estate, would be "book value," determined by the independent certified accountants for the company in accordance with generally accepted accounting principles consistent with the method of accounting then employed by FHT, and that such valuation would be paid by delivery "of a promissary [sic] note due fifteen years from date, bearing interest at the rate of four percent (4%) per annum . . . ." The record reveals that at the date of Feuerhelm's death no *independent* certified accountants were in the employ of FHT. Rather, the determination of book value of the stock was performed by Gary Duncan, an employee of FHT and former comptroller of one of its subsidiaries. Duncan testified he determined the book value of the stock by computing the corporation's historical cost less liabilities, less depreciation. Using the general ledger of FHT and its subsidiaries, he determined a total stockholders' equity of $3,285,541. After arriving at this figure, Duncan contacted the accounting firm of Peat, Marwick, Mitchell & Co. and supplied it with his computations and the number of outstanding cor-

porate shares of stock. The accounting firm determined the book value of the stock to be $519.20 a share, but noted that its opinion was based on the financial information provided by Duncan and not according to the firm's general auditing standards. On July 10, 1980, a promissory note dated June 1, 1980, was tendered on behalf of FHT to the Feuerhelm estate in the amount of $2,751,811.92, payable 15 years after date at an interest rate of 4 percent, in exchange for the 5,300.1 shares held by the estate. The promissory note was rejected by Duane Feuerhelm. Duncan subsequently received additional financial information from two subsidiaries of FHT, which caused him to increase the book value to $563.08 per share, and he prepared an additional promissory note in the amount of $232,568.39. This note was also rejected by the estate. On appeal it is alleged that the accounting procedures utilized by Duncan wrote approximately $4,500,000 in value off the corporate books. In defense of the figures the appellees allege that the stock agreement does not provide for a certified audit and that they stand willing to perform their obligation at whatever book value might be established by such an audit.

While it is generally true that to constitute a valid tender the tenderer must offer a specific amount, such amount need not be beyond reasonable dispute. 86 C.J.S. *Tender* § 7 (1954). This would appear to be the case in the present circumstance where the resolution refers to "book value" determined by "generally accepted accounting principles." Book value, as applied to corporate stock, ordinarily means the net value shown on the corporate books of account of all assets of the corporation after deducting all liabilities. *Schaffer v. Below,* 278 F.2d 619 (3d Cir. 1960). The appellants' claim that there has been no proper tender is based on the fact that the book value determined by Duncan has not been validated by independent certified accountants. The ap-

pellants have not, however, shown the amount calculated by Duncan to be insufficient under the circumstances, nor did they retain an independent accountant to compute a different "book value." In *Haller v. Chiles, Heider & Co., Inc.*, 195 Neb. 65, 236 N.W.2d 822 (1975), this court considered the rights of the parties under a stock option purchase agreement that provided that the consideration to be paid for the shares was to be the "net book value" as of December 31, 1973. We held that the terms of the option were definite enough to bind the corporation to purchase the shares at whatever "net book value" might ultimately be determined. The evidence does not disclose any bad faith on the part of Duncan in computing the book value of the FHT shares. Furthermore, unlike the cases involving "perfect tender," as cited by the appellants, it is generally recognized that the technical rules governing tender in actions at law are not binding on a court of equity. 86 C.J.S. *Tender* § 5 (1954).

In considering how the value of the stock or "book value" of FHT is to be ascertained, the stock restriction resolution calls for a determination by independent certified accountants for the company in accordance with generally accepted accounting principles. This determination involves, primarily, an examination of the corporate books and other pertinent financial records as of the date of death of the shareholder. See Annot., Valuation of Corporate Stock Under "Buy-Out" or "First Option" Agreement Giving Option to or Requiring Corporation or Other Stockholders to Purchase Stock of Deceased or Withdrawing Stockholders, 54 A.L.R.3d 790 (1974). The rights of the parties must be determined by the language of the stock restriction. The resolution reflects an agreement by Feuerhelm and Thompson to protect the interest of each other by requiring that the book value be determined by independent certified accountants so that the fair value of the shares

owned by the selling stockholder, or by the estate of a deceased stockholder, may be realized. No formula for determining book value is established by the resolution other than a determination based on accepted accounting principles. We believe the intention of the parties is clearly expressed in the resolution and, while the Duncan figures were not shown to be erroneous, we must remand this proceeding to the District Court with instructions that a determination of the value of the stock be made by independent certified accountants. Upon this determination, the appellants are ordered to deliver the stock of the Feuerhelm estate to FHT in return for its promissory note under the terms and conditions specified in the resolution.

We also determine, as did the trial court, that the intervenor is not an indispensable party to the subject matter of this controversy: the validity and enforcement of the 1972 stock restriction resolution entered into between Feuerhelm and Thompson. She has an action pending against the Feuerhelm estate, and the. actions taken by the District Court and this court on appeal shall not prejudice her right, if any, against the estate. For these reasons the order of the District Court is affirmed in part, and in part remanded for further proceedings in accordance with our instructions.

From a review of the praecipes for the transcript, we conclude that each party is responsible for the duplicative nature of the record before us, and therefore order that each party bear his, its, and her own costs incurred in connection with this appeal.

AFFIRMED IN PART, AND IN PART REMANDED WITH DIRECTIONS.

WHITE, J., concurs in the result.