720 F.2d 525
 37 UCC Rep.Serv. 803
 McHENRY COUNTY CREDIT COMPANY, a Delaware corporation;
General Credit & Service Company, a Delaware corporation;
Thompson Insurance, Inc.; and Monagin Credit Company, a
North Dakota corporation, Appellants/Cross-Appellees,
v.
Duane FEUERHELM, Personal Representative of the Estate of
Jerald E. Feuerhelm, Appellee/Cross-Appellant,
v.
F.H.T., INC., a Nebraska corporation, Appellant/Cross-Appellee.
 Nos. 83-1403, 83-1404 and 83-1434.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 11, 1983.
Decided Nov. 9, 1983.
Rehearing Denied Dec. 7, 1983.
 
 Lyle E. Strom, T. Geoffrey Lieben, Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, Neb., Jay S. Horowitz, Jay S. Horowitz, P.C., Denver, Colo., for appellee/cross-appellant.
 Thomas J. Mullen, Whelan, Foote & Scherr, P.C., Hastings, Neb., Attorneys for appellants/cross-appellees.
 Whelan, Foote & Scherr, P.C., Thomas J. Mullen, Dale A. Norris, Hastings, Neb., for appellant/cross-appellee, F.H.T., Inc., A Nebraska Corp.
 Before ROSS, McMILLIAN and BOWMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case involves an estate claim which was filed by McHenry County Credit Co. (McHenry), et al, in the County Court of Adams County, Nebraska, and later removed to federal court pursuant to 28 U.S.C. Sec. 1441, by Duane Feuerhelm, personal representative of the Estate of Jerald E. Feuerhelm. Jurisdiction of the district court[1] was founded on 28 U.S.C. Sec. 1332 by reason of diversity of citizenship and an amount in controversy exceeding $10,000, exclusive of interest and costs. The case is presently before this court on appeal by McHenry and F.H.T., Inc., and on cross appeal by the Estate.
 
 Facts
 A. Procedural
 
 2
 McHenry Credit, et al, sued the Estate to recover payment on a promissory note, and to acquire certain stock holdings in a closely held corporation, the third party defendant F.H.T., Inc., pursuant to a conversion agreement between defendant's decedent and the Hayden Thompson controlled corporations, including McHenry Credit, et al. Thereafter, the Estate joined F.H.T., Inc., as a third party defendant. They alleged that the decedent acted as a straw man, funnelling the money to F.H.T., and therefore, if the Estate were found liable on the note, F.H.T. should be required to pay.
 
 
 3
 Prior to trial the Estate filed a motion for summary judgment which was granted in part, and denied in part. First they sought to have Monagin Credit Co., dismissed for lack of capacity to sue as Monagin's corporate existence had been terminated. The court granted this portion of the motion. Thereafter, the Estate sought to have the entire action dismissed on the basis that not all the payees on the note had joined in the action as required by Neb.Rev.Stat. (U.C.C.) Section 3-116 (Reissue 1971).[2] The Estate urged that because the note listed the four Thompson group corporations as payees and Monagin Credit now lacked capacity to sue, section 3-116 had not been complied with as not all the payees could enforce the note. The district court rejected this argument.[3] Additionally, the Estate sought to have the interest rate in the note declared usurious, but again the court denied the motion.[4] Finally, they sought to have certain answers of the third party defendant, F.H.T., Inc., stricken, as introducing new theories on the day of the pretrial conference. The court granted this portion of the motion.
 
 
 4
 At trial F.H.T. was denied the opportunity to offer proof of payment as a defense. The basis for this action by the district court was that F.H.T. had not pled payment as an affirmative defense.[5]
 
 B. The Promissory Note
 
 5
 Hayden Thompson and Jerald Feuerhelm incorporated F.H.T., Inc., in 1968, with an understanding that they would be "50/50" partners. Capital contributions to the corporation were not, however, made evenly. Some of Thompson's contributions were made in the following manner: McHenry Credit lent money to Feuerhelm, with notes being executed to evidence the obligation. Feuerhelm then invested the funds in F.H.T.[6] As a result of this method of capitalizing the business, the books came to reflect Feuerhelm as 83% owner of F.H.T., Inc.
 
 
 6
 On March 1, 1972, a promissory note was executed consolidating all of the prior debt obligations of Feuerhelm. The amount owing was $616,837.11, with interest at 3% over the prime rate at the First National Bank of Minneapolis. The note also gave the Thompson controlled lenders the right to convert a portion of the debt to F.H.T. stock. This was designed to enable Thompson to protect his 50% interest in the corporation. The note provided:
 
 
 7
 Portions of this note are convertible at $10-per shr. into F.H.T. Stk. Limited to 50% of outstanding subject to terms on back of note.
 
 The back of the note stated:
 
 8
 The McHenry County Credit Company, General Credit and Service, Thompson Insurance, Inc. and Monagin Credit Company shall at their option at any time during the term of this note convert a portion of this note into FHT common stock at ten dollars ($10) purchase price per share. This is limited to a total number of shares sufficient to have the Thompson holdings, or their assigns, equal to 50% of the total outstanding shares. This may be done through issuing new shares or by having Feuerhelm transfer from his holdings to bring both parties up to 50-50 level in FHT, Inc.
 
 C. The Trial Court's Judgment
 
 9
 The jury verdict resulted in a judgment favorable to the plaintiffs and, in response to an interrogatory, the jury specifically found that the plaintiffs and Feuerhelm intended the promise on the reverse side of the note to be binding against the Estate, and that the note had not been rescinded by acts of the parties occurring after March 1972. The verdict also declared that Feuerhelm was acting as a straw man and that the parties intended most of the money to be loans to F.H.T. $542,907.00 was found owing on the note: $511,961.00 represented a loan flowing through the straw man to F.H.T., and an additional $30,946.00 was included in the note but was not intended as a loan to F.H.T.
 
 
 10
 Judge Urbom acknowledged the jury's determination that the plaintiffs were entitled to conversion rights against the Estate. He did not, however, enter this portion of the judgment, because the Nebraska Supreme Court had upheld the validity of a buy-sell agreement in a related matter, requiring the Estate to sell all its stock back to F.H.T. See F.H.T., Inc. v. Feuerhelm, 211 Neb. 860, 320 N.W.2d 772 (1982). Judge Urbom held that the conversion right could not be enforced because the Estate did not possess the stock.
 
 
 11
 The plaintiffs subsequently filed a motion to amend the judgment to enforce the conversion right. They urged that although the Estate no longer possessed the stock, a constructive trust should be imposed on the "book value" of the stock received by the Estate on redemption by F.H.T. The court denied the motion, as well as the Estate's motion to modify the judgment, and F.H.T.'s motion for a new trial. This appeal-cross appeal followed.
 
 Issues
 
 12
 There are four issues presented by the parties in this case. First, whether the district court erred in refusing to enforce plaintiffs' conversion right against the Estate. Second, whether the court erred in refusing to permit F.H.T. to present evidence on the issue of payment. Third, whether the court erred in finding that the interest rate was nonusurious. Finally, whether the note was enforceable under U.C.C. Sec. 3-116. For the reasons set forth in this opinion we reverse the judgment of the district court with regard to the stock conversion right, and affirm in all other respects.
 
 Discussion
 
 13
 The initial question for our determination is whether the plaintiffs' conversion right can be enforced against the proceeds from the sale of the Estate's stock in F.H.T. The district court took the position that because the Estate did not possess the stock there was nothing for the conversion right to operate on. We disagree.[7]
 
 
 14
 The jury's verdict specifically determined that the plaintiffs had stock conversion rights which were enforceable against the Estate. The jury rejected the Estate's claim that the stock restriction agreement somehow rescinded the conversion agreement. A jury's verdict may be overturned only where the evidence is susceptible to no reasonable inferences sustaining it. See Kayser v. Rockwell Graphic Systems, Inc., 666 F.2d 1233, 1235 (8th Cir.1982); Zoll v. Eastern Allamakee Community School Dist., 588 F.2d 246, 250 (8th Cir.1978) (citations omitted). Such is not the case here.
 
 
 15
 Here, the parties intended to protect Thompson's 50% ownership interest in F.H.T., Inc., even in the event of a death. Although the stock is no longer in the Estate's possession, the proceeds from the sale of the stock will be eventually. We are of the opinion that a constructive trust should be imposed on so much of the proceeds as is necessary to reflect Thompson's additional 33% ownership interest in F.H.T., Inc.[8] Therefore, we remand on this issue and direct the district court to await the final action of the state courts in F.H.T., Inc. v. Feuerhelm, supra. If the state courts do not take into account plaintiffs' $10.00 per share conversion right in that portion of the stock which would equalize ownership between the Estate and Thompson, then the district court should impose a constructive trust on the proceeds the Estate receives from the sale of the stock as set forth above.
 
 
 16
 With respect to the remaining issues, we have carefully studied the record, including the briefs and arguments of the parties. We find no merit in the remaining arguments, and accordingly affirm the district court pursuant to Rule 14 of the rules of this court. See 8th Cir.R. 14.
 
 Conclusion
 
 17
 The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this order.
 
 
 
 [1]
 The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska
 
 
 [2]
 Section 3-116 provides:
 
 
 [3]
 116. Instruments payable to two or more persons
 An instrument payable to the order of two or more persons
 * * *
 (b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.
 NEB.REV.STAT. (U.C.C.) Sec. 3-116 (Reissue 1971).
 
 
 [3]
 The district court held:
 Section 3-116 was intended to prevent the drawee of a negotiable instrument--such as the note in this action--from being subject to multiple suits by payees. See Vance v. Vance, 124 Ariz. 1, 601 P.2d 605, 607 (1979). Monagin's dismissal, based upon an abatement of its cause of action, obviates any concern for multiple suits. Therefore, Sec. 3-116 is not applicable to this situation and does not prevent this lawsuit from going forward.
 McHenry County Credit Co. v. Feuerhelm, Civ. No. 81-L-10 (D.Neb. April 20, 1982). The purpose of section 3-116 is to protect the interest of all of the parties. It enables all parties entitled to payment to receive payment without subjecting the maker to multiple liability. See Schranz v. I.L. Grossman, Inc., 90 Ill.App.3d 507, 511-13, 45 Ill.Dec. 654, 659-60, 412 N.E.2d 1378, 1383-84 (1980).
 
 
 [4]
 The court relied on Shull v. Dain, Kalman & Quail, Inc., 201 Neb. 260, 264, 267 N.W.2d 517, 520 (1978), in holding that the North Dakota usury statute was applicable under Nebraska conflicts laws, and that even if Nebraska usury laws controlled, the Second Restatement of Conflicts would still allow the rate to be upheld. Restatement (Second) Conflict of Laws Sec. 203 (1971), allows an interest charge in a contract to be sustained if "it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law under the rule of Sec. 188." Id
 
 
 [5]
 It is well settled that payment is an affirmative defense which must be pled. See Person v. United States, 112 F.2d 1, 3 (8th Cir.1940); Foremost Ins. Co. v. Allied Financial Serv., Inc., 205 Neb. 153, 159, 286 N.W.2d 740, 744 (1980)
 
 
 [6]
 This arrangement was apparently entered into for tax planning purposes
 
 
 [7]
 In F.H.T., Inc. v. Feuerhelm, supra, the Nebraska Supreme Court addressed the issue of whether the buy-out agreement between the controlling shareholders of F.H.T., Inc. was valid. The conversion rights in issue in the instant litigation were not under consideration in the state court proceedings involving the restriction agreement
 The Nebraska Supreme Court upheld the validity of the agreement because nothing in the articles of incorporation or the bylaws restricted the right of shareholders to enter into such an agreement. Id. 320 N.W.2d at 776. The court remanded the case with instructions that a determination of the value of the stock be made by independent certified public accountants, in accordance with the agreement. Id. at 778. The outcome of the restriction agreement litigation is thus not final.
 
 
 [8]
 We are mindful of the fact that Thompson is now, in fact, the sole owner of F.H.T., Inc. However, any solution other than that suggested here would result in F.H.T.'s paying the Estate for stock which Thompson was already entitled to purchase at a lower price