FLETCHER v KENTUCKY INNS, INC.

Docket No. 77-422. Submitted October 4, 1978, at Grand Rapids—
Decided February 6, 1979. Leave to appeal denied, 406 Mich
959.

Plaintiffs Charles S. White and Virginia S. White were the
owners of certain stock in defendant Kentucky Inns, Inc.,
which was subject to a transfer restriction by virtue of the
articles of incorporation. The restriction allowed the corpora-
tion 30 days in which to accept "in its entirety" any bona fide
offer to purchase the shares. Plaintiff Ralph G. Fletcher, Jr.,
offered to purchase the shares in return for a promissory note
from his company personally guaranteed by him and agreeing
to assume the liability of the Whites on two loans by a bank to
Kentucky Inns, which the Whites had personally guaranteed.
The Whites submitted the offer to Kentucky Inns, Inc., in
compliance with the stock transfer restrictions. Kentucky Inns
sought to exercise its right by offering to give the Whites a
promissory note secured by the stock and to assume the
Whites' liability on the loans. The Whites transferred the stock
to Mr. Fletcher and, when Kentucky Inns refused to transfer
the shares on its books plaintiffs began a lawsuit to compel the
transfer of the shares and for money damages. Defendant
counterclaimed for damages. The Alpena Circuit Court, Philip
J. Glennie, J., granted judgment against defendant compelling
the transfer and denying any money damages to any party.
Defendant appeals. *Held:*

The offer was not accepted "in its entirety" within the 30-day
period and plaintiffs are entitled to the transfer on the books of
defendant.

Affirmed.

CORPORATIONS — STOCK — TRANSFER OF STOCK — RESTRICTIVE TRANS-
FER — RIGHT OF FIRST REFUSAL.

An offer by a corporation to purchase stock by executing a note

REFERENCES FOR POINTS IN HEADNOTES

[1] 18 Am Jur 2d, Corporations §§ 381-387, 424-432.

Registration: remedy for refusal of corporation or its agent to
register or effectuate transfer of stock. 22 ALR2d 12.

Construction and application of provision restricting sale or trans-
fer of corporate stock. 2 ALR2d 745.

promising payment for the stock according to a fixed schedule, pledging that stock as security and agreeing to assume any liability the seller may have incurred to a bank by virtue of being a guarantor of notes made by the corporation to the bank is not a valid exercise of the corporation's right of first refusal where the terms of the other offer included a note from the buyer's corporation personally guaranteed by the buyer, and the buyer agreed to personally assume the liability of the seller on the notes to the bank.

*Boyce, Yahne, Wenzel & White,* for plaintiffs.

*Thomas R. Lewis,* for defendant.

Before: D. F. WALSH, P.J., and T. M. BURNS and C. J. BYRNS,* JJ.

C. J. BYRNS, J. Defendants appeal of right from that portion of the trial court's January 23, 1978, judgment, entered after a bench trial, which ordered defendant Kentucky Inns, Inc. to transfer on its corporate books ownership of 1500 shares of its stock from plaintiffs Charles S. and Virginia S. White to plaintiff Ralph G. Fletcher, Jr. At issue in this case is paragraph V(3)(b) of Kentucky Inns' articles of incorporation which contains the following stock transfer restriction:

"Any stockholder who desires to sell all or part of such stock shall first offer in writing such stock for sale to the corporation at the same price and upon the same terms offered to such stockholder by a bona fide prospective purchaser of such shares. The corporation shall have the option for thirty days after receipt of such written offer to accept such offer. If, within such 30 day period, the corporation shall fail to accept such offer *in its entirety,* the option hereunder to purchase such stock shall terminate. If the corporation shall not exercise the option, then the stockholder so desiring to sell

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a part or all of his stock shall have the right for a period of sixty days after the expiration of the aforesaid thirty day period to sell such stock to, and only to, the aforesaid bona fide prospective purchaser in the same quantity, at the same price, and upon the same terms as were offered to the corporation. Upon the expiration of such 60 day period, stock not sold by such stockholder shall be subject to all of the restrictions with respect to transferability and shall be held subject to by-laws and articles of incorporation of the corporation." (Emphasis added.)

We hold that under all of the facts and circumstances of this case defendant Kentucky Inns, Inc. did not properly exercise its right of first option to purchase the Whites' stock and we therefore affirm the well reasoned decision of the trial judge.

At the time of the events which engendered the present action, Kentucky Inns, Inc. was a closely held corporation of which plaintiffs White were shareholders. Plaintiff Fletcher owned 100% of Fletcher Motels, Inc. and was a business competitor of Kentucky Inns. Fletcher, by letter dated August 11, 1976, offered to purchase the Whites' Kentucky Inns stock. The total price, payment schedule, and rate of interest are not contested.

In his offer Fletcher stated that the Whites would receive the note of Fletcher Motels, Inc.; that he would personally guarantee this note; and that he would assume the Whites' liability on two loans made to Kentucky Inns, Inc. by the Peoples Bank and Trust of Alpena, Michigan, of which either or both of the Whites were personal guarantors, and which totaled $37,500.

By letter dated August 17, 1976, Fletcher indicated he would withdraw his offer to purchase the Whites' stock if his offer were not accepted by August 25, 1976. Plaintiff Charles S. White on August 21 wrote "Accepted" on Fletcher's August

11 letter. White on August 23 advised Kentucky Inns, Inc. by letter of Fletcher's stock purchase offer and included a copy of this offer.

Kentucky Inns' board of directors held a special meeting on September 15, 1976, to consider the offer by the Whites and another individual of their stock to the corporation. The minutes of this meeting state in pertinent part:

"Since the letter of Charles S. White did not specifically offer his stock for sale to the corporation, Mr. White was asked as to the intention of his letter and he advised the Directors that he was doing whatever was required to be done with the corporation as a condition to selling his stock to a person other than the corporation. He specifically stated he was fulfilling the requirements of Article V of the Articles of Incorporation."

The board voted to exercise its option to purchase the Whites' stock in accordance with the restrictive stock transfer provision of article V(3)(b). The directors proposed that Kentucky Inns execute a note promising payment for the stock according to a fixed schedule and pledging the stock as security. The board also agreed that the corporation would assume any liability which Mr. White might have to the bank, incurred as an officer, director or shareholder of the corporation. The corporation's purchase of the Whites' stock was specifically conditioned upon approval of the transaction by Peoples Bank and Trust. Mr. White advised the directors at this meeting that he did not necessarily agree that the security offered by Kentucky Inns was the same as the security offered by Fletcher in the latter's offer to purchase the Whites' stock.

By letter dated September 16, 1976, the corporation advised Mr. White that it would purchase the

Whites' 1500 shares of stock, would execute a promissory note promising payment of the indebtedness, would pledge the stock as collateral for payment of the indebtedness, and would "assume any and all liability which you may have to Peoples Bank and Trust of Alpena incurred as .a shareholder, director, or officer of Kentucky Inns, Inc. or any predecessor corporation". A copy of this letter and a copy of a letter from the bank approving Kentucky Inns' stock purchase offer was hand delivered to plaintiffs' home on September 21, 1976. However, Mr. White was out of town on business at that time and consequently did not read the letter until his return on September 23. On September 28, 1976, Mr. White met with Kentucky Inns' president and wrote "Refused" on the corporation's September 16 letter.

The minutes of Kentucky Inns' September 22, 1976, board of directors meeting contain the cryptic comment that "Stanley Beck had been satisfied and that the John Baker Trust is willing to do the same with Charles S. White". However, it was not until November 16, 1976, that a Peoples Bank and Trust officer officially notified the Whites regarding the willingness of Mrs. Thelma Baker, individually and as co-trustee of the John Baker trust, to tender additional guarantees to them. The corporation on that same date advised plaintiffs of the offer by Mrs. Baker and the John Baker trust to guarantee payment of the corporation's note for purchase of the Whites' stock and to substitute for plaintiffs as guarantors of the corporation's bank loans.

On November 23, 1976, the Whites transferred their stock to Fletcher. The stock certificates, duly completed, signed, and witnessed, were subsequently delivered to defendant corporation. When

the corporation refused to transfer the Whites' stock to Fletcher on the corporation records, the present lawsuit commenced.

The pivotal issue in the instant case is whether defendant corporation, within the 30-day option period described in paragraph V(3)(b) of its articles of incorporation, agreed "to accept such offer *in its entirety*". (Emphasis supplied.) To resolve the question presented it is necessary to ascertain when the 30-day option period commenced and whether Kentucky Inns during this period communicated to plaintiffs White acceptance of the Whites' offer "in its entirety", *i.e.,* whether the terms of Kentucky Inns' offer to purchase the Whites' stock were equivalent to the terms offered to the Whites by Fletcher for the same stock.

The minutes of the September 15, 1976, special meeting of defendant corporation's board of directors clearly reflect that as of that date defendant corporation was well aware that the Whites were offering their stock to the corporation pursuant to the requirements of article V(3)(b). The 30-day option period during which Kentucky Inns could "accept such offer in its entirety" therefore commenced on September 15, 1976.

We turn next to a determination of whether defendant corporation within the 30-day option period communicated to the Whites an acceptance of their offer which was equivalent in its terms to the terms of the offer already tendered to the Whites by Fletcher. In this connection it is necessary to interpret the phrase "in its entirety" as that phrase is used in the stock transfer restriction appearing in defendant corporation's articles of incorporation.

The proper standard for interpreting restrictions on transfer of corporate stock has been stated in

12 Fletcher, Cyclopedia of Corporations, § 5461.3, p 198 as follows:

"As indicated, a power to deny or restrict the transferability of stock will not be implied and will be strictly construed, because 'shares of stock are transferable as other personal property, and the courts have jealously guarded facilities for the transfer of title, and all unreasonable attempts to restrain the right to pass title have been declared void as against public policy'." (Footnotes omitted.)

In 2 O'Neal, Close Corporations, § 7.05a, p 16, it is stated:

"On the one hand, the courts tend to strictly construe restrictions on the transfer of stock. On the other hand, they are reluctant to give such a restriction an interpretation that will permit outsiders to become shareholders in the corporation against the wishes of those who are already participants, and thus defeat one of the principal objectives of a first option provision." (Footnotes omitted.)

See generally in this connection O'Neal & Moeling, *Problems of Minority Shareholders in Michigan Close Corporations,* 14 Wayne L Rev 723 (1968).

Even if this Court were to construe the stock transfer restriction liberally in favor of defendant corporation, we would be unable to agree with defendants' contention that Kentucky Inns accepted the Whites' offer "in its entirety" within the allotted time period. For, whether interpreted liberally or strictly, the phrase "in its entirety" certainly connotes that the salient conditions of the offer originally made by Fletcher to the Whites must have been met by Kentucky Inns and communicated to the Whites within 30 days. However,

there exist two important terms of the Fletcher offer which were *not* met by defendant corporation and communicated to plaintiffs White within the option period.

First, it will be recalled that Fletcher in his offer to the Whites stated that he would personally guarantee his corporation's note for the purchase of their stock, and there exists no doubt in the instant case of his financial ability to do so. By contrast, Kentucky Inns in its September 16, 1976, letter to Mr. White stated that it would execute a promissory note promising payment of its indebtedness, but made no mention of any personal guarantor of this note. The minutes of defendant corporation's September 15, 1976, board of directors meeting clearly reveal that Mr. White at that meeting pointed out that he did not necessarily agree that the security offered by the corporation was the same as the security being offered him by Fletcher. Consequently, defendant corporation should have been on notice that this term of its offer was *not* equivalent to the corresponding term of Fletcher's offer and therefore could not be said to constitute an acceptance of the Whites' offer "in its entirety".

The second substantive term of the Fletcher offer which was not timely matched by Kentucky Inns in its acceptance of plaintiffs' offer pursuant to paragraph V(3)(b) was Fletcher's offer to assume any liability plaintiffs might incur as personal guarantors of two loans by Peoples Bank and Trust to Kentucky Inns, Inc. totaling $37,500. The best defendant corporation could offer in this regard was its statement that the corporation itself would assume any and all liability which Mr. White might have to Peoples Bank and Trust incurred as a shareholder, director, or officer of

defendant corporation. However, since the corporation was already the principal debtor of the two loans to it by the bank, its offer to Mr. White to assume any liability he might have to the bank arising from his relationship with the corporation was in reality a mere cipher. Kentucky Inns' failure to meet this term of the original Fletcher offer buttresses the conclusion that it did not accept the Whites' offer "in its entirety" within the option period.

The trial judge in the case at bar found that defendant corporation had not met these two essential terms of the original Fletcher offer within the 30-day option period. It was not until after the option period had expired that defendant corporation communicated to the Whites the willingness of Mrs. Baker, individually and as co-trustee of the John Baker trust, to guarantee Kentucky Inns' note for the stock purchase and to assume plaintiffs' liability as personal guarantors of the loans by the bank to Kentucky Inns. These factual findings by the lower court are not clearly erroneous. GCR 1963, 517.1. Plaintiffs Whites' subsequent transfer of their stock to Fletcher was therefore valid according to the provisions of paragraph V(3)(b) of defendant corporation's articles of incorporation.

The trial court's January 23, 1978, judgment ordering defendant corporation to transfer on its books and records ownership of the 1500 shares of stock from plaintiffs White to plaintiff Fletcher is affirmed.