**NORWEST BANK SOUTH DAKOTA, N.A., f/k/a First National Bank of the Black Hills, Plaintiff and Appellee,**

v.

**Ted VENNERS, Defendant and Appellant,**

and

**Stanford M. Adelstein, Robert Adelstein, Black Forest Development, Inc., Black Forest Realty, Inc., Black Forest Inn, Inc., Forest Inn, Inc., Robford Company, and Bank Realty Company, Defendants.**

No. 16330.

Supreme Court of South Dakota.

Considered on Briefs March 22, 1989.

Decided May 31, 1989.

Joseph M. Butler and Patrick Duffy of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

J. Crisman Palmer of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for plaintiff and appellee.

Wayne F. Gilbert of Banks, Johnson, Johnson, Colbath & Huffman, Rapid City, for defendants.

BOGUE, Circuit Judge.

This case is an appeal from a summary judgment for Norwest Bank of South Da-

kota, N.A., f/k/a First National Bank of the Black Hills (Norwest) and against Ted Venners (Venners), who is the only appellant, and Stanford M. Adelstein (Adelstein). The circuit court found no genuine issue as to a material fact and found that Venners was liable as a guarantor of certain promissory notes to Norwest. Venners claims that a genuine issue of a material fact exists about Norwest's waiver of Venners' liability upon the guarantee. We affirm.

By September of 1975, loans from Norwest were in excess of $400,000.00 to Black Forest Development, Inc., Black Forest Realty, Inc., Black Forest Inn, Inc., and Forest Inn, Inc., land development corporations owned by Venners and Adelstein. In 1977 Norwest requested a restructuring of the debt, additional collateral and a guarantee of the loan from Venners and Adelstein. Just prior to execution of the written guarantee by Venners and Adelstein, Venners signed over his stock in the Black Forest corporations to Adelstein. Adelstein and Venners discussed division of the surplus, if any, that might later develop. Thereafter, Adelstein ran the companies. In 1983, at a Norwest discount committee meeting, Norwest noted it was no longer looking to the corporations or Venners for repayment, but to Adelstein:

> Mr. Ashmore presented the annual review for Black Forest Development, Inc., & Affiliated Companies. Present debt is $226,371.99 of a renewal note dated 5–2–77, due 5–2–87, for $408,628.15 at 9%, semi-annual payments of $31,367 starting 11–1–77 due each May and November 1. Secured by assigned contracts for deed which are escrowed in our bank, in the amount of $12,678.02, 1st REM on the building occupied by Hills Tire & Supply at 5th and Main and a 2nd REM (now has moved to 1st position) on a building at 7th and Main. The appraised value of these building in May 1977 was $130M and $150M respectively. Also we have the guarantees of Stan Adelstein and Ted Venners. Mr. Adelstein's statement dated 12–31–81 shows a net worth of $1,795M. We are now no longer *looking to* the corporations or Ted Venners

for repayment of the debt, strictly to Stanford Adelstein. (emphasis added).

This information was not communicated to Venners, whose first knowledge of it came after this action was started. In 1985 Norwest notified Venners that the borrowers still owed on the note. This action against Venners began in November 1986.

The well known requirements for summary judgment set forth in *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968) need not be restated. Here, Venners claims Norwest waived its right to recover against him based upon, (1) the inactivity and lack of communication by Norwest with Venners, and (2) the loan committee's notes. Regardless of anything in the guarantee to the contrary, Norwest could waive its right to the guarantee.

No factual dispute exists about the genuineness of the notes or guarantees, the default or the amounts due. No dispute exists about the fact that Norwest did not seek recovery from Venners until the commencement of this action or communicate with him concerning the defaults or any actions against the corporations or Adelstein. The language of the loan committee notes is also not disputed, nor is the fact that Venners knew nothing of the committee meeting or the committee notes until after this action began.

> The doctrine of waiver is applicable where one in possession of any right, whether conferred by law or by contract, and with full knowledge of the material facts, does or forebears the doing of something inconsistent with the exercise of the right. To support the defense of waiver, there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right.

*Subsurfco, Inc. v. B–Y Water Dist.*, 337 N.W.2d 448, 456 (S.D.1983).

■ Waiver may be either express or implied. If implied, it arises from an act or acts which clearly are inconsistent with the right to be exercised. Under the facts most favorable to Venners, Norwest's only acts were a forbearance to proceed against

the corporation and a lack of notification to Venners that it intended to hold him under the guarantee. These, however, are not inconsistent with the right to hold Venners to his guarantee. The language of Venner's guarantee waives notice, and SDCL 56–1–26 relieves Norwest of any delay. Venners cannot use the delay or lack of notice to provide a basis for waiver.

■ If the waiver is express, it also must be clear, unequivocal and decisive. It must also be published and cannot be the secret intention of the party waiving. *Gerard v. Sanner*, 110 Mont. 71, 103 P.2d 314 (1940), which both parties cite, states:

> "Waiver" has been well defined, and this court in *Northwestern F. & M. Ins. Co. v. Pollard*, 74 Mont. 142, 238 P. 594, 596 [1925], sets out its essential elements. Waiver requires two parties—one party waiving the right, and another receiving the benefit of such waiver. "Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. *There can be no waiver unless so intended by one party and so understood by the other.*" (emphasis supplied; citation omitted).

Also 92 C.J.S. Waiver at 1061 (1955) states:

> *Publication of intention.* The most rudimentary essential of a waiver is that the waiving party shall in some manner publish his intention to relinquish his rights, either by words or by conduct; and the intention which is essential to establish a waiver is not the secret intention of the party, rather, it is the intention which is manifested by conduct or words in relation to the matter involved, and thus the secret understanding or intent of the parties is immaterial on the question of waiver.

When taken in context the loan committee notes do not clearly express an intention to waive by saying "looking to," and there clearly is no indication of an intent to release both Venners and the corporation from any debt action. Also, the notes were never published or communicated to Venners and fall short of being a waiver.

The judgment is affirmed.

WUEST, C.J., and MORGAN, SABERS and MILLER, JJ., concur.

BOGUE, Circuit Judge, for HENDERSON, J., disqualified.