1999 SD 22

Gary CASE, Plaintiff and Appellant,

v.

Craig MURDOCK, Nancy Murdock, and Sandra McCroden, individually and derivatively as shareholders of Hickok's, Inc., a South Dakota corporation, Defendants and Appellees.

No. 20538.

Supreme Court of South Dakota.

Considered on Briefs Jan. 14, 1998.

Decided Feb. 24, 1999.

Rehearing Denied April 1, 1999.

Robert F. LaFleur of LaFleur, LaFleur & LaFleur, Rapid City, South Dakota, for plaintiff and appellant.

Richard A. Pluimer, Belle Fourche, South Dakota, for defendants and appellees.

MILLER, Chief Justice.

[¶ 1.] Gary Case claimed Murdocks and McCroden intentionally interfered with his employment contract and his contract to purchase stock. The trial court granted summary judgment to Murdocks and McCroden, and Gary appeals. We affirm.

## FACTS

[¶ 2.] The facts surrounding this appeal are fully stated in our opinions in *Case v. Murdock*, 488 N.W.2d 885 (S.D.1992) and *Case v. Murdock*, 528 N.W.2d 386 (S.D.1995). However, for purposes of this appeal, a brief review of the pertinent facts is necessary.

[¶ 3.] Hickok's, a closely held gaming corporation located in Deadwood, South Dakota, was incorporated in November 1989. The board of directors, which at the time consisted of Maxine Case, Judith Sides, Sandra McCroden, and Gary Case,[1] met for the first time on January 4, 1990. At the meeting, the board hired Gary as general manager for a one-year term and agreed that, in the future, he could purchase 400 shares of corporate stock.[2]

[¶ 4.] On March 10, 1990, both a shareholders' meeting and a board of directors' meeting were held.[3] At their meeting, the shareholders approved a requirement restricting membership on the board of directors to shareholders. This action meant that Gary could no longer serve as a director. The shareholders also unanimously elected Maxine, Judith, Bret Hamm, McCroden, and Craig Murdock as directors of the corporation.

[¶ 5.] The board of directors met immediately following the shareholders' meeting. At the meeting, the board unanimously eliminated the general manager position, which Gary held, and replaced it with a day-shift boss position. The salary and leave provisions of the two positions were identical. Gary was present at the meeting and indicated that this change was acceptable to him.

[¶ 6.] Apparently by the next morning, he was no longer agreeable to the new arrangement. He informed McCroden that he intended to resign and requested that he be paid the remainder of his contractual salary. However, he did not follow through with the threatened resignation and continued to work until May 10, 1990.

[¶ 7.] In May 1990, Gary's divorce became final. At both the May 8 and May 10 board of directors' meetings, Gary requested board approval of his purchase of Hickok's stock. On each occasion, the board refused his requests.

[¶ 8.] Gary brought suit against Murdocks, McCroden, and Hamms, as well as the corporation, alleging their actions tortiously interfered with his employment contract and with his alleged contract to purchase stock. The

---

1. Gary was the only director who did not own shares in the corporation.

2. Gary was involved in divorce proceedings at the time of incorporation and indicated to the other directors that he would be unable to obtain an ownership interest until his divorce became final.

3. The minutes of the March 10 stockholders' meeting list the shareholders as: Maxine Case, Bret Hamm, Angel Hamm, Sandra McCroden, Judith Sides, Craig Murdock, and Nancy Murdock.

trial court granted Murdocks' and McCroden's motion for summary judgment.

[¶ 9.] On appeal, Gary raises the following issue:

Whether the trial court erred in granting summary judgment in favor of Murdocks and McCroden on the intentional interference with contract claim.

## STANDARD OF REVIEW

[¶ 10.] Our review of a trial court's granting of summary judgment is well settled.

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Walther v. KPKA Meadowlands Ltd. Partner,* 1998 SD 78, ¶ 14, 581 N.W.2d 527, 531 (quoting *Specialty Mills, Inc. v. Citizens State Bank,* 1997 SD 7, ¶ 7, 558 N.W.2d 617, 620 (citations omitted)).

## DECISION

**The trial court did not err in granting summary judgment to Murdocks and McCroden on Gary's intentional interference with contract claim.**

[¶ 11.] "This Court has recognized a cause of action for intentional and wrongful interference with contractual relations." *Tibke v. McDougall,* 479 N.W.2d 898, 908 (S.D.1992). "This cause of action is the recognition that valid business relationships and expectancies are entitled to protection from unjustified interference." *Landstrom v. Shaver,* 1997 SD 25, ¶ 81, 561 N.W.2d 1, 18.

[¶ 12.] In *Tibke,* we set forth the elements needed to establish a claim of tortious interference with business or expectancies:

(1) the existence of a valid business relationship or expectancy;

(2) knowledge by the interferer of the relationship or expectancy;

(3) an intentional and unjustified act of interference on the part of the interferer;

(4) proof that the interference caused the harm sustained; and

(5) damage to the party whose relationship or expectancy was disrupted.

479 N.W.2d at 908 (citing *Miller Chemical Co., Inc. v. Tams,* 211 Neb. 837, 320 N.W.2d 759 (1982)). In addition, this Court has recognized that "[i]n South Dakota, no cause of action for tortious interference with contract may be maintained against a corporate officer who, acting within the scope of his or her authority, discharges an employee." *Nelson v. WEB Water Dev. Ass'n, Inc.,* 507 N.W.2d 691, 700 (S.D.1993).

[¶ 13.] Gary claims that McCroden and Murdocks were not acting within the scope of their corporate authority when the alleged interference occurred, and that they were acting out of self-interest, ill will, and malice in interfering with his contract. We disagree.

[¶ 14.] The record clearly establishes that, as of March 10, 1990, Murdocks and McCroden were shareholders of Hickok's, Inc. In addition, the record also shows that at the March 10 stockholders' meeting, Craig Murdock and McCroden were unanimously elected directors of the corporation, and the election preceded the board's action regarding the general manager position. Furthermore, the board of directors was acting as a whole

when it unanimously approved the elimination of the general manager position and the creation of the day-shift boss position. Murdock and McCroden did not, and could not, take this action individually.

[¶ 15.] We agree with the trial court when it stated that "there is no genuine issue relative to the fact that all acts complained of happened at a time that the respective defendants were serving as members of the board of directors and that, further, said acts would be within the scope of authority of a corporate director." Because Murdock and McCroden were acting within the scope of their corporate authority, an action for tortious interference with an employment contract cannot be maintained against them. *See Nelson,* 507 N.W.2d at 700.

[¶ 16.] In addition, Gary claims McCroden and Murdocks intentionally interfered with his alleged contract to purchase stock in Hickok's. This claim is also without merit and is resolved by our holding in *Landstrom,* 1997 SD 25, 561 N.W.2d 1. Accordingly, summary judgment was properly granted.

[¶ 17.] Affirmed.

[¶ 18.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

