1999 SD 146

Sandra McCRODEN, Craig Murdock
and Nancy Murdock, Plaintiffs,

v.

Maxine B. CASE, Gary Case,
Defendants and
Appellees,

and

Judith Sides, Defendant,

and

Hickok's, Inc., a South Dakota
Corporation, Interested
Party and Appellant.

No. 20848.

Supreme Court of South Dakota.

Argued Sept. 16, 1999.

Decided Nov. 23, 1999.

Rebecca A. Porter, Rapid City, South Dakota, John J. Delaney, Delaney & Sumner, Rapid City, South Dakota, for defendant and appellee Maxine Case.

Robert F. LaFleur, LaFleur, LaFleur & LaFleur, Rapid City, South Dakota, for defendant and appellee Gary Case.

Courtney R. Clayborne, Kristi K. Wammen, Johnson, Eiesland, Huffman, and Clayborne, Rapid City, South Dakota, for Interested Party and appellant.

## GILBERTSON, J.

[¶ 1.] Defendant Maxine Case (Case) made a motion to determine the status of a corporate stock purchase by her in light of our decision in Case v. Murdock, 528 N.W.2d 386 (S.D.1995), aff'd on reh., 544 N.W.2d 205 (S.D.1996).[1] The Eighth Judicial Circuit Court, Lawrence County, granted the motion and confirmed and awarded the stock to defendant Case. Hickok's, Inc. (Hickok's) appeals. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] This appeal involves Hickok's, a closely-held gaming corporation in Deadwood, South Dakota. There is a long history of conflict and litigation involving Hickok's and its shareholders. Four previous appeals have been decided by this Court: Case v. Murdock, 488 N.W.2d 885 (S.D.1992); Case v. Murdock, 528 N.W.2d 386 (S.D.1995); Case v. McColloch, 1998 SD 117, 587 N.W.2d 205; and, Case v. Murdock, 1999 SD 22, 589 N.W.2d 917. The shareholders of the corporation at the time of this dispute were Maxine Case, Judith Sides, Sandra McCroden and Jean McColloch (joint tenants), Brett and Angel Hamm (joint tenants), and Craig and Nancy Murdock (joint tenants). Case's son, Gary Case, was not one of the original shareholders, but was ostensibly involved in its formation and incorporation. Gary Case allegedly became a shareholder in February, 1993, after a jury awarded him

---

1. The original parties to this action below were Sandra McCroden, Craig Murdock and Nancy Murdock, Plaintiffs, versus Maxine B. Case, Gary Case, and Judith Sides, Defendants. Hickok's, Inc. was an Interested Party. In this appeal, the Appellant is Hickok's, Inc. and the Appellees are Maxine and Gary Case. None of the Plaintiffs timely perfected a proper appeal to this Court.

one Class A voting share and 399 Class B nonvoting shares. This award of stock was reversed by our decision in *Case v. Murdock,* 528 N.W.2d 386 (S.D.1995), and the shares previously issued to Gary Case were rescinded.

[¶ 3.] Two factions developed among the shareholders: the Case faction consisting of Maxine Case, Gary Case, and the Sides; and the McCroden faction, consisting of McCroden, McColloch and the Murdocks. Between February, 1993 and February, 1995, while occupying the status as a shareholder, Gary Case exercised voting rights on corporate issues which affected the internal structure of the corporation. Included among such issues, and the subject of this appeal, is the sale of stock owned by Brett and Angel Hamm to Case.

[¶ 4.] At an October 12, 1993 shareholders' meeting, Brett and Angel Hamm by delivery of a Notice of Intent to Sell Stock, offered to sell their 400 shares of stock (399 nonvoting shares and one voting share) in the corporation for $236,831.63. The Notice began with the following recital:

TO: HICKOK'S INC. AND ITS SHAREHOLDERS

Notice of Bret and Angel Hamm's intent to sell stock is hereby given to Hickok's, Inc., and its shareholders, for the purpose of giving Hickok's, Inc. thirty (30) days, and/or its shareholders forty (40) days, within which to exercise their option to purchase said stock pursuant to the provisions of Article VI of the Articles of Incorporation of Hickok's, Inc.

The Notice went on to set forth the terms of the intent and offer to sell stock, including the price, indemnity provisions, transfer of the stock certificate and a closing date of November 22, 1993. The Notice of Intent to Sell Stock triggered the preemptive rights provision in Article VI of Hickok's Articles of Incorporation, which provides:

PREEMPTIVE RIGHTS

The following provisions are adopted, creating preemptive rights to acquire additional shares and restricting transfer of common stock.

Any further offering of common stock to the incorporators and subscribers shall first be offered at par pro rata to the common stockholders in relation to their then present holdings within which to purchase said additional shares. Any shares not so purchased by the common stockholders may then be purchased by any other person.

In the event a stockholder desires to sell his shares of stock, he must first offer them for sale to the corporation, stating the terms of sale and unless his terms are accepted by the corporation shall be deemed to have been waived. At the same time as the notice to the corporation, the selling stockholder shall give notice to the other holders of common stock, setting forth the terms of his offer to sell, it being the intention to give the present stockholders a preference in the purchase of such shares in the event the corporation shall not redeem same. Said notice and offer shall state the terms of sale and unless the terms are accepted within thirty (30) days by the corporation or within forth [sic] (40) days from the date of said notice by one or all of the other stockholders, the stockholder and corporate preferences set forth herein shall be deemed to be waived and the selling stockholder shall be at liberty to sell to any person or corporation.

[¶ 5.] On November 9, 1993, a corporate meeting was held during which a motion passed unanimously for Hickok's not to exercise its preemptive right to purchase the Hamm stocks. On November 16, 1993, the McCroden faction's attorney, acting on its behalf, wrote a letter which stated in part:

At the most recent directors meeting, we discussed the fact the corporation and other shareholders may be open to

suggestion or discussion as to the manner in which the purchase of Bret Hamm's stock in the corporation can be accommodated.

The letter went on to propose that Maxine Case loan the corporation the money with which to purchase the Hamm stock, or as an alternative that the corporation declare a "substantial dividend" from which the shareholders would purchase the stock.

[¶ 6.] At a November 23, 1993 corporate meeting, the proposals of the McCroden's letter came up for discussion. Case indicated she would not commit to a loan to the corporation until a written proposal was submitted.

[¶ 7.] On November 23, 1993, Case completed her purchase of the Hamm stock and received the stock certificate on December 2, 1993. Case paid $236,831.63 for the stock. Plaintiffs commenced this action on December 3, 1993. In their initial complaint, Plaintiffs sought declaratory relief regarding a reclassification of nonvoting stock, but made no mention of the Hamm stock. Over two and one-half years later, an amended complaint was filed which added a number of allegations and claims. Included in the prayer for relief of the amended complaint was the following request:

6. That the Court Order Hickok's, Inc. to exercise its preemptive right to purchase the "Bret Hamm" shares as would have occurred but for the wrongful issuance of stock to Gary Case.

[¶ 8.] On April 27, 1998, Case filed a Motion to determine the status of the Hamm stock. After a hearing, the trial court granted summary judgment on August 6, 1998, holding: (1) the Case/Hamm purchase agreement, as presented to the Corporation on October 12, 1993, was an offer to sell stock; (2) on November 9, 1993, the directors of the corporation voted unanimously not to purchase the shares, which then allowed the individual shareholders ten additional days within which to purchase the stock; and (3) the shareholders' preemptive rights to purchase the

stock expired on November 21, 1993, and the shareholders failed to exercise their rights within the time permitted. The trial court confirmed Case's purchase of the Hamm stock.

[¶ 9.] Hickok's appeals raising the following issue:

Whether the trial court erred when it determined as a matter of law that the sale of the Hamm stock to Maxine Case was valid in that Hickok's and the shareholders' preemptive rights were foreclosed.

## STANDARD OF REVIEW

■ [¶ 10.] Our standard of review for a trial court's grant of a motion for summary judgment is well settled. As we recently stated in *Mattson v. Rachetto:*

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin,* 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

1999 SD 51, ¶ 8, 591 N.W.2d 814, 816–17 (quoting *Shuck v. Perkins County,* 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586). Cases involving the interpretation of written documents are particularly appropriate for disposition by summary judgment, such interpretation being a legal issue rather than a factual one. *Dale v. Pelton,* 365

N.W.2d 1, 3 (S.D.1985); *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19, 21 (S.D.1968).

## ANALYSIS AND DECISION

[¶ 11.] **Whether the trial court erred when it determined as a matter of law that the sale of the Hamm stock to Maxine Case was valid in that Hickok's and the shareholders' preemptive rights were foreclosed.**

[¶ 12.] Hickok's claims the trial court erred in allowing summary judgment on Case's claim that the sale of the Hamm stock to her should be confirmed and that the preemptive rights of the corporation and shareholders had been waived. It claims genuine issues of material fact existed as to each faction's version of events surrounding the sale of the Hamm stock. Hickok's claims the trial court erred when it determined the Case/Hamm purchase agreement presented to the corporation on October 12, 1993 was an offer to sell the stock. By doing so, Hickok's argues, the trial court made a factual determination regarding when the thirty-day time requirement for the corporation to exercise its preemptive rights began to run.

[¶ 13.] Hickok's also claims the trial court made a further erroneous factual determination when it determined a vote for the corporation not to purchase the Hamm stock was made at the November 9, 1993 meeting. Hickok's argues no such vote was made during this meeting, claiming the only vote made at the meeting was to allow an additional nine days for both the corporation and the stockholders to consider the purchase.

[¶ 14.] Finally, Hickok's claims the trial court should not have made a factual determination the shareholders' preemptive

rights had expired as of November 21, 1993, because it involves a factual determination of what events actually took place at the shareholder meetings. Hickok's argues two different versions of the events that took place during shareholder meetings exist, thereby creating genuine issues of material fact.

[¶ 15.] The uncontradicted material facts of this case establish otherwise. The Hamms made an agreement with Case to sell their stock to her. That agreement was delivered to the corporation on October 12, 1993 by the Notice of Intent to Sell Stock. The Hamms' intent to sell their stock was also discussed at the October 12, 1993 meeting, which is reflected in the transcript[2] of the meeting:[3]

MS. CASE: I do have some knew [sic] business I want brought up.

MR. BUTLER: Now, this is just in lieu—Maxine has been—Brett Hamm has been given intent to sell their stock. That has to be run by the board under the bylaws. Then if the board rejects it, the stockholders have a right to—preemptive right to buy their proportionate shares.

So what I thought we'd do is we'd give you the notice of intent today and then we will address it at the next meeting.

MR. LAFLEUR: I think there's some timing that runs with it, Joe. I think there's 30 days that Hickok's has to meet the offer and an additional tens [sic] days for the individual stockholders or some such thing.

MR. BUTLER: Yeah.

MR. LAFLEUR: *So I guess it's the intent to start the time line?*

MR. BUTLER: Yeah.

MS. CASE: I don't believe Gary got a copy. You want a copy, Gary?

**2.** Despite Hickok's claim there exists two versions of what occurred at the shareholder meetings in October and November of 1993 there is only one version. By this time relations between the two factions of shareholders had deteriorated to such a low ebb that all shareholder meetings were taken down verbatim by a court reporter. Transcripts prepared by the court reporter are part of the court record.

**3.** During Hickok's shareholder meetings, Robert Lafleur represented Gary Case and Joseph Butler represented Hickok's. On appeal, Hickok's is represented by different counsel.

MS. CASE: I can use that extra copy unless you want to present it to Judge Young.

(emphasis added). Hickok's argues there was some confusion between the factions as to when the thirty-day time requirement for the corporation to exercise its preemptive rights began to run. However, Hickok's argument is without merit. It is clear from the above colloquoy the time line was to start running on October 12, 1993, and the stockholders and their respective counsel present at the meeting were aware of this fact.[4] Moreover, it appears from the above exchange, copies of the Hamms' Notice of Intent to Sell stock were distributed among the shareholders present at the meeting. Thus, the thirty-day time limit for the corporation to exercise its preemptive rights to the stock began to run according to Article VI of the Hickok's Articles of Incorporation.[5]

[¶ 16.] The relevant portion of the preemptive rights provision in Article VI provides:

> [the] notice and offer shall state the terms of sale and unless the terms are accepted within thirty (30) days by the corporation or within forty (40) days *from the date of said notice* by one or all of the other stockholders, the stockholder and corporate preferences set forth herein shall be deemed to be waived and the selling stockholder shall be at liberty to sell to any person or corporation.

(emphasis added).

■ [¶ 17.] The preemptive rights provision of Hickok's Articles of Incorporation is the equivalent of a right of first refusal, which is a restriction on stock transfer. Because restrictions on the sale of stock are not generally favored, such restrictions must be strictly construed. *United States v. Adkins–Phelps, Inc.*, 400 F.2d 737, 740 (8th Cir.1968); *F.H.T., Inc. v. Feuerhelm*, 211 Neb. 860, 320 N.W.2d 772, 777 (1982); *see also Kerr v. Porvenir Corp.*, 119 N.M. 262, 889 P.2d 870, 872 (N.M.App.1994).

[¶ 18.] Although there is no South Dakota law on point, the case of *Fletcher v. Kentucky Inns, Inc.*, 88 Mich.App. 456, 276 N.W.2d 619 (1979) is instructive. In *Fletcher*, a shareholder desired to sell his stock to a third party. The third party/buyer made a specific offer at a September 15, 1976 meeting, which the shareholder submitted to the corporation. The corporation then had thirty days within which, according to the corporate bylaws, it could exercise an option "... to accept the offer in its entirety." *Id.* at 621. The court concluded "[t]he minutes of the September 15, 1976, special meeting of defendant corporation's board of directors clearly reflect that as of that date defendant corporation was well aware that the [sellers] were offering their stock to the corporation pursuant to the requirements of [the articles of incorporation]. The 30–day option period during which defendant corporation could accept such offer in its entirety therefore commenced on September 15, 1976." *Id.* at 621 (internal quotations omitted). The corporation did accept the offer within thirty days, but did not meet

---

4. The following individuals were present at the October 12, 1993 meeting: Judith Sides–Case; Maxine Case; Gary Case; Sandra McCroden; Nancy Murdock by teleconference; and Jean McColloch. The following attorneys also made appearances at this meeting: Joseph Butler, representing Hickok's, Robert Lafleur, representing Gary Case, and Richard Pluimer, representing Sandy McCroden, Craig and Nancy Murdock and Jean McColloch. Significantly neither the Hamms nor anyone who represented them were present to discuss any alternative proposals to their offer to sell their stock.

5. Pursuant to SDCL 47–2–5(8), a corporation's articles of incorporation control the preemptive rights, if any, available to the corporation or shareholders. This provision states: "The articles of incorporation shall set forth: (8) Any provision limiting or denying to shareholders the preemptive right to acquire additional or treasury shares of the corporation ..." *See also Fuller v. Krogh*, 15 Wis.2d 412, 113 N.W.2d 25, 32 (1962) (the articles of incorporation may limit or deny the preemptive right of a shareholder.)

all of the terms. The Michigan Court of Appeals held the corporation did not properly exercise its right of option within the thirty-day option period, thereby freeing the selling shareholder to complete his transaction with the third party/buyer. *Id.* The court stated:

> The proper standard for interpreting restrictions on transfer of corporate stock has been stated in 12 Fletcher, Cyclopedia of Corporations, § 5461.3, p. 198 as follows: 'As indicated, a power to deny or restrict the transferability of stock will not be implied and will be strictly construed, because shares of stock are transferable as other personal property, and the courts have jealously guarded facilities for the transfer of title, and all unreasonable attempts to restrain the right to pass title have been declared void as against public policy.'

*Fletcher,* 276 N.W.2d at 621.

[¶ 19.] In this case, the finality of the transfer of stock from the Hamms to Case should be left intact. To further extend the time requirements of Hickok's Articles of Incorporation without the Hamms' consent is an unreasonable, repugnant and void restraint on the alienation of property. *See* SDCL 43-3-5.[6]

[¶ 20.] We do not find a genuine issue of material fact as to the date upon which the Hamm's offered to sell their stock. The clock began to tick for the corporation to exercise its preemptive rights on October 12, 1993. Thus, Hickok's had thirty days from that time to accept the Hamms' offer to purchase the stock.

■ [¶ 21.] On November 9, 1993, twenty-eight days after the Hamms delivered their Notice of Intent to Sell, Hickok's voted unanimously not to accept the offer.[7] Hickok's decision not to purchase the stock

is evident from the transcript of the meeting:

> MR. BUTLER: The next meeting—the next action you've got is the stock purchase of the [sic] Brett and Angel Hamm.
>
> MR. CASE: I make a motion that the corporation does not exercise its right to purchase the stocks and that the individuals have 10 days, which I think is what they have is 10 days more than the Articles of Incorporation makes its decision from now, to purchase their share of the stocks or if any individual shareholders elect not to exercise their right that it go proportionately to those who do wish to exercise a right.
>
> MS. CASE: Do I hear a second on that?
>
> MS. SIDES–CASE: I'll second that motion, Judy Sides.
>
> . . .
>
> MR. CASE: Okay. Motion was to—for the corporation not to accept and not to exercise its right to purchase the Brett Hamm stocks and to give the other stockholders 10 days to purchase their proportionate share of the stocks, and if any other stockholders do not want to purchase their share then the remaining ones that do get to purchase that much more on their proportionate share. In other words, if there are three stockholders that wish to buy, then the total purchase be divided up proportionate-wise between those three.
>
> MR. BUTLER: In accordance with the equity interest?
>
> MR. CASE: Right. I'd like to also amend that if somebody can come up with a proposal that—which it may include the corporation issuing some

---

6. SDCL 43-3-5 provides: Conditions restraining alienation, when repugnant to the interest created, are void.

7. The following individuals were present at the November 9, 1993 meeting: Maxine Case, Brett Hamm, Judith Sides–Case, Sandra McCroden, Jean McColloch, Gary Case and Nancy Murdock by teleconference. However Hamm did not participate in any manner in the discussion of his offer to sell his stock and was specifically precluded from voting on any motions concerning his offer to sell his stock.

kind of dividend that might help towards the purchase, that type of thing, that they do so within the next four or five days and—

MR. BUTLER: Well, let's give them—let's make it—give them nine days.

MR. CASE: Okay, nine days. And if we don't hear anything by then—

MR. LAFLEUR: Well, if the proposal—I think what you're going to say is if there is a proposal that the corporation wants to consider, then there may be an extension time to consider the proposal to a new date.

■ [¶ 22.] This motion passed unanimously, except for Brett Hamm who was not allowed to vote and included affirmative votes from Sandra McCroden and Nancy Murdock. It is clear the motion was for Hickok's not to accept the Hamm offer, with an amendment that a proposal such as a dividend which would allow shareholders to accept the proposal would be considered at a later date. Nowhere does the amendment contradict, modify or amend the body of the motion which rejected the Hamms' offer. Therefore, Hickok's failed to take any action to exercise its right to purchase the shares within the thirty-day time period (by November 11, 1993), notwithstanding the motion and vote on November 9, 1993. Since there was no unconditional outright acceptance by Hickok's of the offer to purchase, the Hamm's obligation to sell to it automatically expired by the passage of the thirty days and was waived. A transfer restriction may be waived by failure to exercise a "first option" stock purchase within due time requirements. 18A AmJur2d *Corpo-*

*rations* § 695. Furthermore, Hickok's Articles of Incorporation clearly state that unless the terms are accepted within the time limit, they "shall be deemed waived." As we find there is clear uncontradicted evidence in the record Hickok's chose not to accept the Hamms' offer, there is no genuine issue of material fact.

■ [¶ 23.] Hickok's decision to reject the offer to purchase the Hamm stock allowed the shareholders ten additional days to make the purchase if they so desired. Hickok's claims the McCroden faction's letter dated November 16, 1993 was in accordance with its belief that the ultimate decision of the November 9, 1993 meeting gave both the corporation and the shareholders an additional ten days to exercise preemptive rights. This letter began as follows:

> At the most recent directors meeting, we discussed the fact the corporation and other *shareholders may be open to suggestion or discussion* as to the manner in which the purchase of Bret Hamm's stock in the corporation can be accommodated. (emphasis added).

However, Case argues this letter was only a "proposal" or counteroffer, not an agreement or acceptance.[8] We agree. It simply suggested new options (i.e., for Case to loan the corporation the money to purchase the shares or for the corporation to declare a substantial dividend to enable the shareholders to purchase the stock), but did not accept the specific terms of the offer to sell. The precatory wording of the letter is hardly indicative of any belief by the corporation that there had been a clear

---

**8.** During the November 23, 1993 meeting, Case indicated she would *consider* loaning a substantial amount of money to Hickok's, but not until the terms were specified in writing. After a general description of the transaction ("It would be a little over $80,000 a year plus interest"), Case stated: "All right, okay. That would be—that *could* be acceptable." (emphasis added). This language cannot be construed an acceptance of an alleged proposal by the corporation. Any corporate action would have required an agreement from Case. But Case did not agree to any such proposal; she simply stated "it could be acceptable." There was no discussion about what the amount of the loan would be, interest rate, dates of payment, place of payment, voting rights, details of security agreement, etc. More importantly the forty days for the shareholders to exercise their option had already expired on November 21st and thus, this was no more than a discussion of a new counter-offer to the Hamms.

and unequivocal decision to dispense with the deadlines and time frames, which had expired by the time the letter was written. Moreover, a stockholder who is aware of his or her preemptive rights, and is given notice and the opportunity to exercise those preemptive rights, waives the rights if not exercised within a fixed amount of reasonable time. *Fuller*, 113 N.W.2d at 33; *see also* 18A AmJur2d *Corporations* § 535 (if a stockholder does not assert his privilege within a fixed time, he will be deemed to have waived his right to a preference). Since no shareholder acceptance of the Hamms' terms of sale occurred within forty days (by November 21, 1993), the shareholders' preemptive rights were also waived under the Hickok's Articles of Incorporation.

▰▰▰▰ [¶ 24.] Claims of shareholder confusion as to the status of the offer to sell are simply not material to the language of the Articles of Incorporation. Once the time commenced running, the options would automatically expire in thirty and forty days unless the offer to sell was unconditionally accepted. The fact the shareholders met to discuss the subject of a possible purchase had no effect on the time period continuing to run. Had the shareholders never met to discuss the subject during the time period or discussed it every one of the forty days, the option would still have expired on the fortieth day absent an unconditional acceptance which never occurred or a unanimous agreement to extend the period of time.

▰▰▰▰ [¶ 25.] Hickok's argues, the time requirements as to the exercise of preemptive rights were somehow waived or unilaterally extended. We find this argument is flawed. In order for the time requirements pertaining to the exercise of preemptive rights to be excused, the Hamms must have made a waiver, because

it was their right to sell to Case that was being contested. The Hamms did not personally attend the October 12, 1993 meeting. Neither did they execute a proxy or power of attorney for someone to act on their behalf and had no attorney present at this meeting. Brett Hamm did attend the November 9, 1993 meeting but never agreed to any alternative sale proposals or an extension of time.[9] The Hamms never executed any type of document granting an extension of time nor did any representative on their behalf. They viewed their obligation under the Articles of Incorporation as satisfied by waiver due to expiration of time, as within two days of the expiration of the forty-day period, they sold their stock to Case. There is no evidence in the record indicating the Hamms ever agreed to a so-called waiver or extension of time to exercise preemptive rights by Hickok's or the shareholders. There has been no showing of a clear, unequivocal and decisive act by the Hamms showing an intention to relinquish their right to enforce the time limitations. *Norwest Bank v. Venners*, 440 N.W.2d 774, 775 (S.D.1989) (citing *Subsurfco, Inc. v. B–Y Water Dist.*, 337 N.W.2d 448, 456 (1983)). As repeatedly stated by this Court, the elements of waiver are:

> A waiver exists where one in possession of any right, whether conferred by law or contract, and of full knowledge of the material facts, does or forbears the doing of something inconsistent with the existence of the right.

*Baldwin v. National College*, 537 N.W.2d 14, 18 (S.D.1995) (quoting *Jones v. Sully Buttes Schools*, 340 N.W.2d 697, 699 (S.D. 1983) (other citations omitted)). *"There can be no waiver unless so intended by one party and so understood by the other."*

---

9. Despite the fact at this meeting Hamm was still a shareholder with all the applicable rights, he was specifically refused a right to vote on the resolution to have the corporation not exercise its right to purchase his stock which prior to the vote, included a discussion

of a possible extension of time. When asked by Case whether Hamm's permission for an extension of time was necessary, corporate counsel summarily dismissed it with the comment, "No, no, no. He's not involved. All he's involved is for money."

*Venners*, 440 N.W.2d at 776 (emphasis in original).

[¶ 26.] In summary, the record clearly establishes that, as of October 12, 1993, the time period in which Hickok's and the shareholders could exercise preemptive rights began to run. In addition, the record also shows that at the November 9 meeting, a vote was taken to not purchase the Hamm stock as offered. Furthermore, the record shows the shareholders' preemptive rights to purchase the Hamm stock expired on November 21, 1993. The shareholders failed to exercise their rights within the forty days permitted by the Hickok's Articles of Incorporation. As there is no dispute the terms of the offer were not accepted within the time frame by either Hickok's or the shareholders, any remaining issues of fact are not material issues of fact necessary to the resolution of this case. Hickok's argument is no more than comparing the after-the-fact affidavits of the various shareholders as to what the shareholders believed occurred at the meetings and since their beliefs are inconsistent, Hickok's declares a question of fact must exist.

[¶ 27.] The real evidence of what actually happened at the meetings is contained in the official transcripts of the meetings rather than subsequent affidavits by shareholders as to their beliefs. We have rejected "eleventh-hour" affidavits to prevent summary judgment in an effort to contradict what to that point, are uncontradicted facts, especially when these questionable affidavits are based upon "assumptions and suppositions." *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 502–03 (S.D.1990); *Guilford v. Northwestern Public Service*, 1998 SD 71, ¶ 12, 581 N.W.2d 178, 181.

[¶ 28.] Hickok's fails to articulate how it, rather than the financial status of the individual shareholders, is prejudiced by the sale of the stock from Hamms to Case. The plaintiff shareholders below failed to timely appeal to this Court to protect their interests and it now appears the corporation is being used to do what these shareholders, through their own inaction, cannot do themselves.

[¶ 29.] We have viewed all reasonable inferences in favor of Hickok's and agree with the trial court's finding as a matter of law that the sale of stock to Case was valid and that Hickok's and the shareholders' preemptive rights were foreclosed. We agree with the trial court's order confirming and restoring to Maxine Case all voting, dividend and other rights associated with the Hamm stock as of the date of purchase, November 23, 1993.

[¶ 30.] We affirm.

[¶ 31.] MILLER, Chief Justice, and KONENKAMP, Justice concur.

[¶ 32.] AMUNDSON, Justice, concurs in result.

[¶ 33.] SABERS, Justice, dissents.

AMUNDSON, Justice (concurring in result).

[¶ 34.] A review of the corporate minutes and record in this case discloses that the shareholders are definitely the parties in interest in this appeal. From the transcript of the November 23, 1993 corporate meeting, the record reflects the following discussion:

[SHAREHOLDER'S ATTORNEY]: Well, our position is that by refusing to pay out a reasonable dividend to allow these shareholders to purchase the pro rata share of stock that Brett—is being offered constitutes in effect a freeze out or a restriction on—and impairs the ability of the shareholders to exercise this option. Now both Judy and Gary indicated that at this last meeting that they probably were not interested in exercising their option to buy a proportionate share of Brett's interest.

MR CASE: That's correct.

[SHAREHOLDER'S ATTORNEY]: So what it seems to me is that when you prohibit a reasonable dividend from be-

ing paid out when the corporation has these kinds of monies available, that in effect it constitutes a freeze out and an impairment of the shareholder's ability to exercise their proportionate share.

The transcript of the May 28, 1998, motion hearing reflects that the corporate attorney did not even participate in that hearing.[10] The shareholders did not appeal the decision of the trial court to protect their rights. In fact, the brief of the shareholders was stricken. Therefore, I affirm because the real parties in interest, who participated in the lower court, did not appeal the trial court's decision.

SABERS, Justice (dissenting).

[¶ 35.] On October 12, 1993, Brett and Angel Hamm delivered their Notice of Intent to sell their 400 shares of stock for $236,831.63. Pursuant to the Preemptive Rights clause within the Articles of Incorporation, the corporation had thirty days, from the date of the Notice of Intent, to accept the offer while the stockholders had forty days to accept the terms of the offer. Thus, the corporation had until November 11, 1993 to exercise its right to purchase the Hamm stock.

[¶ 36.] On November 9, 1993, the directors held a meeting and discussed the purchase of the Hamm stock. Gary Case made a motion that the corporation not purchase the stock. After Maxine Case seconded the motion, he amended his motion to extend nine more days to allow the directors to submit proposals to the corporation concerning the method of purchasing the stock. The corporation's attorney, Joe Butler, stated that the decision whether to purchase the Hamm stock had to be made by November 25, 1993. Maxine Case then seconded the motion. Judy Sides–Case, Sandra McCroden, and Nancy Murdock agreed and voted to extend the time for the corporation to consider alternative proposals to purchase the stock. Brett Hamm was present at this meeting and did not object, but remained silent on the issue of these extensions.

[¶ 37.] A proposal was submitted to the corporation on November 16 by McCroden and Murdock.

[¶ 38.] On November 23, 1993, the directors met again to discuss the proposal for the purchase of the Hamm stock. At this meeting, Maxine Case stated that she would accept a proposal that would require her to carry $164,000 of the purchase price for two years. Sandra McCroden made a motion that the corporation accept that proposal and purchase the stock. Nancy Murdock seconded the motion. Gary Case and Judy Sides–Case voted against the proposal and Maxine Case abstained from voting. Since the Gary Case vote is null and void as later determined by the trial court and affirmed by this court, the corporate vote to purchase passed by a 2–1 vote. Brett Hamm was not present at this meeting.

[¶ 39.] Despite the affirmative 2–1 corporate vote to purchase, Maxine Case proceeded to purchase the Hamm stock for herself for $236,831.63 after the November 23 meeting. This purchase was null and void because the corporation voted to purchase the stock.

[¶ 40.] On June 6, 1997, the trial court entered an Order Granting Partial Summary Judgment in favor of Sandra McCroden, Craig Murdock and Nancy Murdock. The trial court found that all decisive votes of Gary Case "as a 'director and/or shareholder'" are null and void; specifically his votes during the November 9, 1993 and the November 23, 1993 meetings. This court summarily affirmed this Order on February 23, 1998.

---

10. The motion hearing transcript reflects the following discussion between the shareholder's attorney and the court:
   [SHAREHOLDER'S ATTORNEY]: Can I just—Mr. Clayborne [Corporation's attorney] had to leave. He has a meeting with another party, and he had asked me to advise the Court that he has nothing to add to this hearing.

[¶ 41.] After applying this Order, it appears that the corporation, in a 2–1 vote, did vote to purchase the Hamm stock on November 23, two days before its "closing" date. However, the trial court subsequently (and incorrectly) found that the corporation did not vote to purchase the Hamm stock at the November 9, 1993 meeting and the right to purchase the stock expired on November 21. It granted summary judgment to Maxine Case and found that she owned the Hamm stock. Summary judgment was clearly improper because, at the very least, genuine issues of material fact exist. The corporation appeals and we should reverse and remand for trial.

[¶ 42.] Genuine issues of material fact exist concerning what the shareholders actually voted on during the November 9, 1993 meeting. The majority opinion points out that Gary Case made a motion that "the corporation ... not exercise its right to purchase the [Hamm] stock...." But Gary Case amended this motion before the other directors voted. The subsequent discussion involved extending nine days to the directors to submit proposals and extending the corporation's time to November 25 to consider the proposal:

MR. CASE: I'd like to also amend [the motion] that if somebody can come up with a proposal that—which it may include the corporation issuing some kind of dividend that might help towards the purchase, that type of thing, that they do so within the next four or five days and—

MR. BUTLER: Well, let's give them—let's make it—give them nine days.

MR. CASE: Okay, nine days. And if we don't hear anything by then—

MR. LAFLEUR: Well, if the proposal—I think what you're going to say is if there is a proposal that the corporation wants to consider, then there may be an extension time to consider the proposal to a new date.

MR. CASE: But isn't there also some kind of promise that we need to close this to Brett?

MR. BUTLER: We got to close this by November 25th.

MS. MCCRODEN: Oh, is that in this?

MR. BUTLER: Yeah.

MS. MCCRODEN: I didn't see that.

MS. CASE: Do we also need to propose this to Brett?

MR. BUTLER: No, no, no. He's not involved. All he's involved is for money.

MR. LAFLEUR: Now there needs to be a second.

MS. CASE: I'll second that motion, if I'm in order to second it. Okay. It's been moved and seconded that we will give—

MR. LAFLEUR: You don't need to restate it.

MR. CASE: Yeah, it's been moved and seconded.

Judy Sides–Case, Sandra McCroden, Nancy Murdock and Gary Case all voted affirmatively. Brett Hamm was present and did not object, but remained silent throughout this discussion.

[¶ 43.] Pursuant to the trial court's June 6, 1997 Order, which we summarily affirmed on February 23, 1998, all decisive votes of Gary Case "as a 'director and/or shareholder' " are null and void; specifically his votes during the November 9, 1993 and the November 23, 1993 meetings. After disregarding Gary Cases' vote and viewing the facts in McCroden's favor, genuine issues of material fact exist whether the corporation voted to extend the time to consider any proposals until November 25.

[¶ 44.] The majority opinion states "[i]n order for the time requirements pertaining to the exercise of preemptive rights to be excused, the Hamms must have made a waiver, because it was their right to sell to Case that was being contested." This is so, even though the corporation's attorney, Butler, submitted that the Hamms were

only interested in the money. The opinion goes on to conclude that a waiver did not occur and therefore, there could be no extension of time granted to the corporation.

[¶ 45.] Waiver applies when "one in possession of any right, whether conferred by law or by contract, and with full knowledge of the material facts, does or forbears the doing of something inconsistent with the exercise of the right." *Norwest Bank South Dakota v. Venners*, 440 N.W.2d 774, 775 (S.D.1989) (quoting *Subsurfco, Inc. v. B-Y Water Dist.*, 337 N.W.2d 448, 456 (S.D.1983)). Waiver can be express or implied. "If implied, it arises from an act or acts which clearly are inconsistent with the right to be exercised." *Id.* We are limited to evaluating Hamm's objective conduct to ascertain the legal effect:

> The most rudimentary essential of a waiver is that the waiving party shall in some manner publish his intention to relinquish his rights, either by words or by conduct; and the intention which is essential to establish a waiver is not the secret intention of the party, rather, it is the intention which is manifested by conduct or words in relation to the matter involved, and thus the secret understanding or intent of the parties is immaterial on the question of waiver.

*Id.* at 776 (citation omitted).

[¶ 46.] Brett Hamm was present during the November 9 meeting and had full knowledge of the substance of the voting. He did not object, but remained silent on the issue of extending the corporation's time to consider new proposals until November 25. His silence, an act of refraining from speaking, was a publication of his intention and was clearly inconsistent with his right to insist on strict adherence to the thirty day time limitation. In construing the facts most favorably to McCroden, genuine issues of material fact do exist whether there was a waiver.

[¶ 47.] A proposal to purchase the Hamm stock was submitted on November 16, within the nine-day extension, by the McCroden faction. It was discussed at the November 23 meeting and voted on:

MR. BUTLER: What they're saying is if they would—if the corporation would pay the $72,600 by the first, $40,000 due at time of closing and $32,600 on March 1st that would you—you would then consider dealing on the balance, as I understand?

MS. CASE: Well, does that come up with the purchase price?

MR. BUTLER: Yes.

MS. CASE: I guess I would have to say yes, I would consider it. I won't make a commitment right now until I see what the proposal would be.

MR. CASE: The proposal is over two years.

MS. CASE: How much would that—

MR. BUTLER: Well, I don't know. That—how much that comes to. It comes to about $14,000 a quarter, wouldn't it Dick? Or more than that?

MR. PLUIMER: A little bit more than that if we did it over two years.

MS. CASE: *Well, yes, I would do that.*

MR. PLUIMER: It would be a little over $80,000 plus interest per year.

MS. CASE: All right, okay. That would be—that could be acceptable.

MR. BUTLER: Okay. So you come back to the basic question as to whether or not the corporation is going to accept it on that basis, and I don't know, somebody want to make a motion either way?

MR. PLUIMER: Sandy, why don't you go ahead.

MS. MCCRODEN: Okay, I'd like to make a motion that the corporation accept those—accept the proposal and pay the $40,000 now to Brett Hamm, and Maxine has agreed to carry the corporation, and so I would propose that we accept that and I'll make a motion to that effect.

MR. BUTLER: And do you want to add and also pay the $32,000 on March 1?

MS. MCCRODEN: Yes, and also pay the $32,000 on March 1.

MS. MURDOCK: This is Nancy Murdock, I'll second it.

Sandy McCroden and Nancy Murdock voted in favor of the motion. Gary Case and Judy Sides–Case voted against the motion. Maxine Case abstained from voting.

[¶ 48.] We must again apply the trial court's June 6, 1997 Order, which we summarily affirmed on February 23, 1998. This Order stated that all decisive votes of Gary Case "as a 'director and/or shareholder' " are null and void; specifically his votes during the November 9, 1993 and the November 23, 1993 meetings. After disregarding Gary Case's vote, it is clear that genuine issues of material fact exist whether Maxine Case agreed to the proposal submitted to her and whether the corporation voted 2–1 to purchase the Hamm stock.

[¶ 49.] This court shall not decide an issue of fact, but "shall determine only whether one exists." *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19, 21 (S.D.1968) (citation omitted). Therefore, I would reverse and remand this case for trial.